Joseph Klimovich, Plaintiff-Appellant, v. Elcue Crutcher, Defendant-Appellee.

Gen. No. 49,407.

First District, First Division.
April 12, 1965.
Rehearing denied May 10, 1965.

Edward Van de Houten and Leo K. Wykell, of Chicago, for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (David Jacker, Thomas D. Allen, and Alan H. Swanson, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Plaintiff, Joseph Klimovich, brought an action against defendant, Elcue Crutcher, for personal injuries incurred when struck by an automobile driven by the defendant. At the close of all the evidence, the trial court directed a verdict and entered judgment for the defendant. Plaintiff appeals contending that the evidence created issues of fact to be determined by the jury, and the court, therefore, erred in directing the verdict.

Defendant contends plaintiff produced no evidence of any negligence on the part of the defendant and that the evidence, as a matter of law, conclusively established plaintiff's contributory negligence.

The incident occurred on June 18, 1956 at approximately 4:30 in the afternoon at about 6400 south on Lake Shore Drive, or the "Outer Drive" (at a point also known as Coast Guard Drive) in the City of Chicago. There was no intersection or marked crosswalk for pedestrians at this location. The roadway in that particular area was at least two lanes wide in each direction of traffic. Each lane was about ten feet wide and separated by a white line. Double yellow lines five inches wide and five inches apart divided the north and southbound lanes.

An overhead pedestrian bridge or overpass was situated north of the site of the incident for traversing Lake Shore Drive above street level traffic. To the east of the scene of the occurrence was a parking lot and further east thereof was Lake Michigan. On the west side of the Drive a pedestrian path ran parallel to the roadway. Just south of the pedestrian overpass the street curved slightly to the right to the point where plaintiff was injured.

The day was sunny and the asphalt pavement dry. Defendant was driving south on Lake Shore Drive. Plaintiff had fished all day in Lake Michigan and was

carrying a fishing pole and a brown paper bag containing fish. He was on his way home intending to board a bus at 63rd Street.

Plaintiff testified he had crossed through the parking lot to Lake Shore Drive at 6400 south. There was "heavy traffic." Before he started to cross he looked north and south and seeing no cars and the street clear, proceeded to cross. He then saw cars approaching from the north. Because of the curve in the street he could not see too far to the north. At that time traffic began coming from both north and south causing him to stop at the center line. While standing there three or four minutes, thirty or forty cars coming from the north passed by. He was looking to the west when the car driven by defendant struck him. He did not see the car.

Defendant, called by plaintiff under Section 60 of the Civil Practice Act, testified he was returning from work, traveling south in the innermost lane at about thirty miles an hour. The speed limit was thirty or thirty five miles per hour. He was in the center of his lane, the left side of his car being about three feet from the yellow center lines. There was "a lot of traffic" and northbound traffic was "heavy". There were cars to his right. As he rounded the slight curve near 6400 south he saw plaintiff. "When I first saw him, he came darting from behind a car, from left to right," running from east to west. Plaintiff was about four or five feet east of the double yellow line and about ten or fifteen feet south and in front of him. Defendant began to apply his brakes "very hard" and put out his left hand to signal the drivers behind him to slow down. But "when I heard the cars behind me making the noise, I let up a bit and trying to watch him too." There were some cars in front of the defendant the closest one being approximately fifty to sixty feet away.

The left front bumper of defendant's car came in contact with "this man that was running." At that moment the car was going about ten to fifteen miles an hour and travelled five or six feet before coming to a stop. After the impact plaintiff was lying in the innermost southbound lane, his head pointing west and his feet two or three feet west of the yellow center lines. Defendant said that at no time did he cross the double yellow lines.

Charlotte Ray testified on behalf of the defendant that she was driving south in the innermost lane. She saw plaintiff walking as he crossed the northbound lane of traffic into the southbound lane. The car that came in contact with him was in front of her "maybe one or two" cars. Before the accident defendant applied his brakes as did she, and the impact took place in the lane in which she was driving, the one next to the dividing line. There was traffic to her right and all lanes were filled. She said her memory was poor and she did not remember whether she saw the impact.

Defendant's other witness, Johnny Walker, testified that he and his friend left the lake where they had been swimming and were on the pedestrian bridge or overpass watching the heavy traffic going both ways. They saw "this guy" standing at the edge of the pavement and then he was running across the street toward the yellow line dividing the traffic. The car going south struck him. "It didn't move out of its lane at all before it hit him." On cross-examination he said he was not sure whether the car was on the yellow line at the time of impact. No part of the car was on the yellow line after it "hit him."

The sole question presented by this appeal concerns the propriety of the trial court's granting of defendant's motion for directed verdict. The applicable principles in passing upon such a motion have

448

been stated innumerable times. The motion presents only a question of law as to whether, when all the evidence is considered, together with all reasonable inference from it, in its aspects most favorable to plaintiff, there is a total failure or lack of evidence to prove any necessary element of plaintiff's cause of action. No contradictory evidence or other evidence of any kind or character will in such cases justify a motion for directed verdict except uncontroverted evidence of facts consistent with every fact which the evidence for plaintiff tends to prove, but showing affirmatively a complete defense. Lindroth v. Walgreen Co., 407 Ill 121, 130, 94 NE2d 847 (1950); Merlo v. Public Service Co. of Northern Illinois, 381 Ill 300, 311, 45 NE2d 665 (1942); Stilfield v. Iowa-Illinois Gas & Elec. Co., 25 Ill App2d 478, 167 NE2d 295 (1960). This requires a consideration of the evidence but precludes any examination of the weight or credibility of the evidence in order to determine its preponderance. Nelson v. Stutz Chicago Factory Branch, 341 Ill 387, 173 NE 394 (1930).

Accordingly, we turn our consideration to an analysis of the evidence in all its aspects most favorable to plaintiff. He was attempting to cross Lake Shore Drive, a four-lane two-way highway at the peak of late afternoon heavy traffic, and as he put it (in broken English) was "no slow." The speed limit was either thirty or thirty five miles an hour. At that point there was no intersection or marked pedestrian crosswalk. There was, however, within a block of the occurrence a pedestrian overpass to facilitate safe crossing and which was in the path of his intended travel. He waited for traffic to clear. His view to the north was limited because of a curve in the road. When he thought the way was clear he stepped into the street and was able to get only to the center when traffic came upon him from both directions so that he could

neither proceed forward nor backward to safety. While standing there, about thirty cars passed before him going south. He kept looking west (forward) and did not see the car that struck him.

From this evidence, taken as true for purposes of the motion, plaintiff asserts that the jury might have reasonably concluded that defendant failed to keep proper control of his vehicle; that he swerved, crossed the yellow lines striking plaintiff, and that such evidence fairly tended to prove defendant guilty of negligence.

However, the controlling question in the case is whether plaintiff, at the time of the accident, was using due care for his own safety. It was incumbent upon him to allege and affirmatively prove that at the time his injuries were sustained he was in the exercise of ordinary care for his own safety. In considering this question plaintiff suggests that there was sufficient evidence from which it could be reasonably inferred that he kept a constant lookout and that having determined that no vehicles were approaching, could safely cross ahead of traffic and that, therefore, it is a question of fact for a jury whether he was in the exercise of ordinary care for his own safety. Plaintiff relies on Trennert v. Coe, 4 Ill App2d 166, 124 NE2d 79 (1955), and Isenhart v. Seibert, 6 Ill App2d 220, 127 NE2d 469 (1955), but these cases are not determinative of the issue presented here.

The question posed is whether, under the circumstances, all reasonable minds would reach the conclusion that the facts failed to establish due care on the part of plaintiff. Ordinarily, such question is one of fact for a jury, but it becomes a question of law when the lack of care on plaintiff's part is so manifest and flagrant as to convince all fair and candid minds that he did not exercise the caution for his own safety that should characterize the acts and conduct of the

450

ordinarily prudent person. Swenson v. City of Rockford, 9 Ill2d 122, 127, 136 NE2d 777 (1956); Stilfield v. Iowa-Illinois Gas & Elec. Co., 25 Ill App2d 478, 167 NE 2d 295.

█ Plaintiff saw the heavy traffic, knew there was an overpass a short distance away in direct path of his travel and that his view of traffic to the north was limited because of the curve in the road. That the situation was imminently dangerous is proven by the fact that he said he could only reach the center of the street when traffic blocked him from proceeding or returning. He had a safe course to follow in crossing the Drive (over the bridge) which a reasonably cautious person would take into consideration in the exercise of due care for his own safety. Where the danger is obvious to a person of ordinary intelligence, the law will charge him with the knowledge of it, and one cannot act, except at his peril, in a place of great danger and remain oblivious to an available alternative course of known safety which lay but steps away.

█ Therefore, under the circumstances presented by the evidence, taken most favorably for plaintiff, we must conclude that fair and candid minded persons could reach but one conclusion, namely, that plaintiff failed to exercise that caution which a reasonably prudent person would use to avoid injury under similar circumstances. Having failed to use such degree of care and caution a recovery in plaintiff's favor is not warranted. For the reasons stated the judgment of the trial court is affirmed.

Affirmed.

BURMAN, P. J. and MURPHY, J., concur.