PAUL M. MISCH, Adm'r of the Estate of Lyle W. Leichtenberg, Plaintiff-Appellant, *v.* MEADOWS MENNONITE HOME *et al.*, Defendants-Appellees.

Fourth District No. 4—82—0639

Opinion filed May 25, 1983.

Bane, Allison, Saint & Ehlers, P.C., of Bloomington (Randall B. Ehlers, of counsel), for appellant.

Costigan & Wollrab, of Bloomington, for appellees.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Plaintiff brought suit against the defendants pursuant to sections 1 and 2 of the Wrongful Death Act (Ill. Rev. Stat. 1981, ch. 70, pars. 1, 2). The cause was tried to a jury in the circuit court of McLean County and a verdict was returned in favor of the defendants and against the plaintiff, who appeals.

Defendant Beck was an employee of defendant Meadows Mennonite Home and was operating a bus owned by the Home in transporting some elderly persons back from a shopping trip in Bloomington. The bus was proceeding in an easterly direction on Illinois Route 9 between Bloomington and Colfax. Beck intended to turn left at the Cooksville-Ellsworth blacktop road but overshot the intersection. She slowed down and was turning into a farm lane east of the blacktop preparatory to turning around to return to the blacktop. During this maneuver the bus was struck in the left rear by a truck driven by plaintiff's decedent, Lyle Leichtenberg, who died as a result of the collision.

Leichtenberg's truck was hauling hot asphalt to a road construction project several miles east of the blacktop. This activity had been going on all day and he was on his final delivery when the collision occurred at about 3:15 p.m. on June 26, 1980.

On appeal plaintiff has raised a variety of issues which may be generally grouped as follows: (1) error in certain instructions to the jury; (2) error in certain evidentiary rulings; and (3) a verdict against the manifest weight of the evidence. Additional factual matters will be developed as necessary in the discussion of the issues.

Overarching the instruction problems is the fact that both the pleadings and the instructions were hybrids, partaking of both comparative negligence (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886) and contributory negligence. They appear to us to be mute testimony to the fact that deeply ingrained notions die hard with the legal profession which is, on the whole, traditionalist.

Plaintiff's complaint was in the usual form, seeking damages under the Wrongful Death Act for the next of kin, expenses for medical, hospital, and ambulance services, and for funeral and burial expenses, and damages for the pain and suffering of the decedent from the time

of the accident until his death. Defendants' answers were also unremarkable, being in the nature of a general denial on all counts. About three weeks before trial plaintiff obtained leave and filed an amendment to the complaint which expanded and amplified the specified allegations of negligence. Defendants filed answers to the amended complaint and set up as an affirmative defense the negligence of plaintiff's decedent, which they alleged alternatively was either "the sole proximate cause" or "a contributing cause" of the occurrence. They then asked that either recovery should be denied or proportionally reduced. Plaintiff filed a reply to the affirmative defense in the nature of a general denial.

This pattern, created by the pleadings, carried over into the instructions. While the jury was thoroughly instructed in comparative negligence and furnished with verdict form reflecting that doctrine, the abolished doctrine of contributory negligence crept in. We note in passing that the same affliction beset the drafters of the "A" Series of Illinois Pattern Jury Instructions (IPI), Civil (1981 Supp.). Many of their comments and notes on use refer to "contributory negligence," although as we understand *Alvis*, no such concept any longer exists.

Plaintiff complains specifically about defendants' burden of proof instruction and his own issues instruction. The burden of proof instruction stated:

"The plaintiff has the burden of proving each of the following propositions:

First, that the defendant acted, or failed to act in one of the ways claimed by the plaintiff as stated to you in these instructions and that in so acting, or failing to act, the defendant was negligent;

Second, that the plaintiff's decedent sustained injuries and died;

Third, that the negligence of the defendants was a proximate cause of the death of the plaintiff's decedent.

In this case the defendant has asserted affirmative defenses:

a. That the plaintiff's decedent in the operation of his motor vehicle was contributorily negligent and that said negligence was the sole proximate cause of the plaintiff's decedent's death.

The defendant has the burden of proving these defenses.

If you find from your consideration of all the evidence that each of the propositions required of the plaintiff has been proved and that none of the defendants' affirmative defenses have been proved, then your verdict should be for the plaintiff.

If, on the other hand, you find from your consideration of all the evidence, that any one of the propositions the plaintiff is required to prove has not been proved, or that any one of the defendants' affirmative defenses has been proved, then your verdict should be for the defendants." IPI Civil No. A21.03 (1981 Supp.).

The issues instruction was originally submitted by the defendants but then withdrawn by them. It was resubmitted by plaintiff and stated:

"The plaintiff claims that plaintiff's decedent sustained injuries and died and that the defendants were negligent in one or more of the following respects:

a. Failed to give appropriate signal of her intention to either stop her vehicle or to turn her vehicle when the decedent's vehicle was immediately to the rear.

b. Failed to give appropriate signal of her intention to turn her vehicle not less than the last two hundred feet traveled before turning.

c. Failed to turn her vehicle into a private road or driveway until such movement could be made with reasonable safety.

d. Failed to keep her vehicle under proper control.

e. Failed to keep a proper lookout.

f. Failed to yield the right-of-way to the decedent's vehicle which was in the process of overtaking her vehicle.

g. Failed to move her vehicle from the lane in which she was traveling until she had first ascertained that such movement could be made with safety.

h. Failed to have a mirror installed to reflect the driver's view of the highway for a distance of at least two hundred feet to the rear of said vehicle.

The plaintiff further claims that one or more of the foregoing was a proximate cause of the injuries which occasioned the decedent's death.

The defendants deny that they did any of the things claimed by the plaintiff, deny that they were negligent in doing any of the things claimed by the plaintiff and denies that any claimed act or omission on the part of the defendants were the proximate cause of the plaintiff's decedent's death.

The defendants further claim that the plaintiff's decedent was contributorily negligent in one or more of the following respects:

a. That the plaintiff's decedent operated his motor vehicle in

a negligent manner at the time of the occurrence.

b. That the plaintiff's decedent operated his motor vehicle at a speed that was greater than reasonable and proper with regard to traffic conditions and the use of the highway.

c. That the plaintiff's decedent drove his motor vehicle to the left of the center of said highway at a time when the vehicle operated by the defendants was signaling for a left-hand turn.

d. By failing to apply brakes when the application of brakes was reasonably necessary to insure the safe operation of the motor vehicle.

e. By failing to sound an audible warning of the approach of said vehicle when the giving of an audible warning or honking of his horn was reasonably necessary to insure the safe operation of his said motor vehicle.

That the defendants further claim that one or more of the foregoing was the sole or a proximate cause of the plaintiff's decedent's death.

That the plaintiff denies that the plaintiff's decedent did any of the things claimed by the defendants, denies that he was negligent, and denies that any claimed act or omission on the plaintiff's decedent's part was a proximate cause of the claimed injuries.

The defendants further deny that the plaintiff's estate sustained damages to the extent claimed." IPI Civil No. A20.01 modified (1981 Supp.).

Plaintiff argues that these instructions, taken together, were confusing to the jury and would prompt the jury to find for the defendants if the plaintiff's decedent were guilty of any negligence—in effect, a return to contributory negligence. He also argues that the emphasis on sole proximate cause does not cure the error, but only magnifies it because of the stress placed upon it, a single issue, contrary to the spirit of *Alvis*.

■ While plaintiff is correct in his theory that contributory negligence is no longer a bar to recovery but that a plaintiff's negligence, if any, goes only to the diminution of his damages (compare the Comment to IPI Civil No. A20.01, at 19 (1981 Supp.)), as a practical matter he has failed to preserve the issue. When the matter was first raised by defendants' answer to the amended complaint, plaintiff did not move to strike the affirmative defense but replied to it. At the instruction conference plaintiff's counsel did not object to defendants' burden-of-proof instruction on the basis that there was no affirmative

defense as such, but rather objected that the instruction on affirmative defenses should go only to the diminution of damages. The first time in the record that it is clear that plaintiff argued the defective nature of the affirmative defense was in his post-trial motion. Objections to instructions not raised at the instruction conference cannot be urged on appeal. *Young v. Gateway Transportation Co.* (1975), 26 Ill. App. 3d 864, 326 N.E.2d 222.

As to the issues instruction, we have already noted that while it was drafted by defendants' counsel, it was withdrawn, but plaintiff's counsel submitted it *in haec verba*. One cannot complain about his own instruction. *Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140, 357 N.E.2d 500.

■ It is evident that some confusion existed in the jury room. During deliberations the jury submitted a handwritten question to the trial judge: "Can you clarify the difference between proof of an affirmative defense and proof of contributory negligence?" After consultation with both counsel, the trial court gave a supplementary instruction as follows:

> "If you find that contributory negligence of plaintiff's decedent, if any, was the sole proximate cause of the injury and death of plaintiff's decedent, then your verdict should be for the defendants.
>
> If you find that contributory negligence of plaintiff's decedent, if any, was a proximate cause of the injury and death of plaintiff's decedent and that negligence of the defendants was a proximate cause, then you should apportion fault as per previous instructions."

We find that this supplement corrected stated the law and served to allay any confusion in the jury's collective mind.

No error occurred regarding these instructions. However, we would call attention, as forcibly as possible, to the trial bench and bar the statement in the Introduction to the Special Supplement containing "A" Series Instructions on Comparative Negligence, wherein the committee states:

> "We leave any further resolution of this and other collateral issues to future decisions of the courts or to future legislation. We invite the Bench and Bar of Illinois to employ such ingenuity as is necessary to tailor these instructions to foster resolution of such issues." (IPI Civil at 5 (1981 Supp.).)

We, too, strongly urge that all instructions be carefully scanned and if necessary edited to meet the revolution wrought by *Alvis*.

■ Plaintiff makes a further objection to an instruction tendered

by defendants and given by the court. It was IPI Civil No. 36.01 (2d ed. 1971) which states, "If you decide for the defendants on the question of liability, you will have no occasion to consider the question of damages." Plaintiff argues that the word "liability" relates to contributory negligence and has no place in comparative negligence. We disagree. Liability is a chief element in any negligence action, whether it be comparative or otherwise. *Alvis* did not eliminate liability from the law; it eliminated contributory negligence on the part of the plaintiff as an absolute bar to recovery and substituted comparative negligence of the parties. If a defendant is guilty of no negligence, *i.e.*, not liable, there is nothing to compare. The instruction is still proper, although it is reiterative and rather meaningless, and so should be used sparingly.

■ The evidentiary issues relate principally to the refusal of the trial court to allow two experts to testify on behalf of the plaintiff. The first was a reconstruction expert whose testimony would have related to the point of impact, the location of the vehicles in relation to one another at the point of impact, the speed of the vehicles at the point of impact, the movement of the vehicles after the impact, and a description of the maneuver which plaintiff's decedent was attempting as indicated by the tire marks on the pavement.

The law in Illinois has been clearly established that eyewitness testimony is preferred over reconstruction testimony. (*Plank v. Holman* (1970), 46 Ill. 2d 465, 264 N.E.2d 12; *McGrath v. Rohde* (1972), 53 Ill. 2d 56, 289 N.E.2d 619; *Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 392 N.E.2d 1.) Defendant Beck testified that she turned on her turning signal about two bus lengths from the farm lane. The length of the bus was 27 feet. She also testified that she looked into her rear view mirrors prior to turning on the signal and saw nothing. James Houchens, a passenger on the bus, testified that he saw the truck twice. The second time it was 200 to 300 feet behind the bus in the eastbound lane. Both Beck and Houchens testified that the bus was partly into the lane when it was struck.

Plaintiff argues that there were no eyewitnesses to the last 200 feet of the movement of the truck. His theory was that the impact was well within the eastbound lane and that Beck was having difficulty making her turn into the farm lane. The expert testimony would have established that the impact was in the eastbound lane.

We find no error in the barring of the reconstruction expert. In addition to the testimony of Beck and Houchens, there was extensive testimony of a physical nature, *i.e.*, location and length of tire marks, location and damage to the vehicles, scuff and gouge marks on the pavement, and similar matters. Reconstruction testimony cannot be

used solely to contradict the testimony of eyewitnesses and the physical evidence. (*National Bank v. Pickens* (1972), 8 Ill. App. 3d 58, 289 N.E.2d 64; *Dauksch v. Chamness* (1973), 11 Ill. App. 3d 346, 296 N.E.2d 592.) It is not necessary that eyewitnesses see everything which occurred. (*Plank.*) It is sufficient if they can relate circumstances from which the impact might reasonably be inferred. That is what happened here.

■ Plaintiff's second expert who was barred had been in the trucking business for 28 years and had driven both buses and trucks similar to the ones involved here. If allowed to testify, he would have said that the turning maneuver attempted by the bus driver would have been a difficult one involving a 90-degree turn. From this plaintiff argues that it would be apparent that the bus was straddling both lanes of the highway so as to prevent plaintiff's decedent from avoiding the collision. In addition, the expert would have testified about the truck and its driver to the effect that under the same circumstances it would be proper to attempt a gradual turn by applying the brakes gradually and not locking them; the latter would have caused the driver to lose control. Plaintiff claims this evidence was essential to his case since there was little other evidence of lack of negligence on the part of his decedent.

Whether expert testimony should be introduced is a matter within the discretion of the trial judge. (*Phillips v. Shell Oil Co.* (1973), 13 Ill. App. 3d 512, 300 N.E.2d 771.) We cannot say as a matter of law that turning a school bus is so arcane a subject as to require expert testimony in order for a jury to understand it. As for the operation of the truck, the obvious purpose of this testimony would be to establish that the driver was acting as a reasonable person. This is a conclusion to be drawn by the jury from all the facts and circumstances and opinion evidence would invade their province. Opinion evidence on an ultimate fact is proper when the fact is beyond the ken of the average juror, *e.g.*, whether a physician used the proper skill; but in this case as with the bus, we cannot say as a matter of law that an expert opinion concerning the operation of the truck would have been helpful to the jury in its determination of an ultimate question of fact. The rulings of the trial court of the introduction of the expert testimony were correct.

■ Plaintiff's next evidentiary issue relates to the testimony of defendant Beck and the witness Houchens. One of plaintiff's theories of negligence on the part of Beck was her failure to give an appropriate turning signal in violation of section 11—804 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—804) which requires that

a turning signal be given continuously and not less than 200 feet traveled in a rural area. Beck testified under cross-examination that she turned her signal on approximately two bus lengths from the farm lane. It was established that the bus was 27 feet 6 inches long. Plaintiff therefore argues that Beck made a judicial admission that her signal was activated only about 60 feet from the turning point in violation of the statute. Houchens testified that the signal was on about one-quarter of a mile from the turn. Plaintiff maintains that Houchen's testimony should have been barred because of Beck's admission.

The subject of a party's testimony as a conclusive admission has become somewhat of a legal quagmire. It is best summarized by Professor Wigmore:

"[C]an it be said that a party's *testimony on the stand as a witness* may sometimes amount to a judicial admission?

There is a temptation to accept such a principle, especially in personal injury litigation, where the shiftiness of perjured or biased witnesses often creates for the Court a wish to see the issue tied down to narrow limits, eliminating the range of mere speculation or manufactured testimony. Some Courts of recent years have accepted the principle with plausible if not convincing reasoning.

\* \* \*

In the first place, the proposed rule is not a simple rule of thumb, but a flexible one, requiring especial judicial wisdom for its sound application. Therefore, while seeking justice, it might often do injustice. In the second place, it affords one more ground for an appeal on a question of law, and thus one more element of delay and technical disputation. In the third place, its purpose can usually be as well attained by a ruling upon the insufficiency of evidence for the jury \* \* \*. In the fourth place, and chiefly, it assimilates testimony on the stand to formal deliberate admissions. But testimony cannot be treated that way. Testimony in court is an elusive matter of mental operations. It is the culmination of much talk and reflection and memory-stirring between all concerned. It is full of surprises at the trial. The truth of the case depends on a comparison of what all the witnesses say and all the circumstances indicate. A rule which binds a party to a particular statement uttered on the stand becomes an artificial rule. It is out of place in dealing with testimony. Let the judge test each case by itself." 9 Wigmore on Evidence sec. 2594(a), at 597-601 (3d ed. 1940).

Wigmore's thesis has been adopted in Illinois:

"While defendants maintain this testimony, standing alone, is a judicial admission of contributory negligence barring plaintiff's recovery, we have previously held (*McCormack v. Haan*, 20 Ill. 2d 75) that while a party may, by his own testimony conclusively bar his claim or his defense, a determination that he has done so depends upon an evaluation of all of his testimony, and not just a part of it, as well as an appraisal of his testimony in the light of that of the other witnesses and a consideration of their respective opportunities to observe the facts about which they testify. McCormick on Evidence, pp. 513-516; 9 Wigmore on Evidence, 3rd ed., sec. 2594(a)." *Carter v. Winter* (1965), 32 Ill. 2d 275, 282, 204 N.E.2d 755, 759.

An examination of all of Beck's testimony indicates that her statement about two bus lengths was at best an educated guess. She had previously been asked at what point she started slowing down and in response stated that it was halfway between two farm lanes. (She had said that she originally intended to turn into a lane west of where she ultimately turned, but elected to go on east to a second lane where the accident occurred.) When asked about that distance, she stated, "*** probably 4½ car lengths or something like that." Another witness who lived on the first farm lane testified that the distance between the lanes was one-half mile.

Beck's statement about two bus lengths was not a judicial admission binding on the defendants, and the testimony of Houchens was properly received.

■ Plaintiff's final contention is that the verdict of the jury was against the manifest weight of the evidence. He maintains that under comparative negligence any negligence on the part of Beck entitles him to a new trial and points to three instances of conduct by Beck which he claims were negligent. First, the matter of the turn signal which we have already discussed. Second, there was testimony by Beck that she did not see the truck prior to the collision. Third, the attempted maneuver of turning a bus from a two-lane highway into a farm lane. Additionally, plaintiff again argues for the reconstruction testimony, saying that it would have established that the bus was in the eastbound lane of the highway and not into the farm lane.

While the evidence is close, we do not feel that the verdict was against the manifest weight of the evidence. We would be compelled to choose between conflicting evidence and inferences therefrom. (Compare *Trauscht v. Gunkel* (1978), 58 Ill. App. 3d 509, 374 N.E.2d 843.) The timing of the turn signal on the bus has already been dealt

with at length above. Whether Beck looked or did not look, or whether she looked but did not see, depends upon Houchen's testimony that he saw the truck about 200 feet away—a clear case for jury determination. The physical evidence, particularly the position of the vehicles after the impact, is determinative of the skill and prudence of the turning maneuver. All these, and more, were decided by the jury adversely to the plaintiff. The opposite result is not palpably clear and convincing.

For all the foregoing reasons, the judgment of the circuit court of McLean County is affirmed.

Affirmed.

MILLS and MILLER, JJ., concur.