EVELYN BLACCONERI, Plaintiff-Appellant, v. DAVID AGUAYO *et al.*, Defendants-Appellees.

First District (4th Division)   No. 84—1046

Opinion filed May 2, 1985.

Propp & Schultz, of Chicago, for appellant.

Gerald W. Saperstein, of Skokie, for appellee David Aguayo.

Jacobs, Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, Donald E. Stellato, and Lloyd E. Williams, Jr., of counsel), for appellee Michael Aguayo.

JUSTICE LINN delivered the opinion of the court:

Plaintiff brought an action for damages against defendants, automobile driver and automobile owner, arising out of injuries she sustained when struck while crossing the street. The trial court granted defendant auto owner's motion for a directed verdict in his favor at the close of all the evidence.

Following instructions and deliberation, the jury found defendant driver liable to plaintiff and awarded her $15,000 in economic damages. The jury further found that plaintiff was contributorily negligent and reduced the damage award by 99% to $150.

On appeal, plaintiff claims that the trial court erred (1) by admitting evidence of safer alternative routes; (2) by giving repetitive IPI instructions to the jury; and (3) by directing a verdict in favor of defendant auto owner.

We affirm the decision of the trial court.

BACKGROUND

In the midst of rush hour, on a dark and drizzly evening in October 1981, plaintiff, Evelyn Blacconeri, was dropped off by a co-worker on the southwest corner of Harlem Avenue and 13th Street. Harlem Avenue is a major four-lane thoroughfare, with two northbound and two southbound lanes divided by a double yellow line. The speed limit on Harlem Avenue is 35 miles per hour. The intersection of Harlem and 13th Street is uncontrolled; there is neither a painted crosswalk nor a traffic signal. The closest controlled intersection to Harlem and 13th Street is Roosevelt Road, one block north. At rush hour, Harlem Avenue is typically well-trafficked in both directions.

After plaintiff was dropped off at the southwest corner of the 13th Street intersection, she crossed from the southwest corner to the northwest side of the street. Plaintiff then attempted to cross Harlem Avenue, walking in a northeasterly direction.

Delores Grech testified at trial that she was walking west on the south side of 13th Street approaching the Harlem Avenue intersection when she saw a woman (plaintiff) standing on the west side of Harlem, approximately 60 feet north of the 13th Street intersection. Grech next saw the woman standing on the center divider in the mid-

dle of Harlem Avenue, apparently having successfully negotiated crossing the southbound lanes. Grech then saw plaintiff hesitate for a few seconds and start across the northbound lanes, making her way east in a diagonal route across Harlem.

Grech testified further that seconds after she saw plaintiff enter the northbound lanes, she saw a car, driven by defendant, Michael Aguayo, approaching in the northbound curb lane on Harlem Avenue, just north of the 13th Street intersection. Grech noticed that another car, approaching from the north in the center lane next to defendant, had slowed down. Immediately thereafter, Grech saw plaintiff struck by defendant's car, which stopped upon impact, approximately 60 feet north of the 13th Street intersection.

Grech's testimony regarding the point of impact was disputed by plaintiff, who claims she was struck "just a couple of feet" north of the 13th Street corner. Five witnesses testified as to where plaintiff and defendant's car were located immediately subsequent to the accident. Among these post-occurrence witnesses was investigating Officer Joseph Petersen, who testified that plaintiff was 67 feet north of the 13th Street curb when she was struck. Also among these witnesses was paramedic James Keating, who estimated that plaintiff was 75 feet north of the 13th Street curb when he found her at the accident scene.

Grech's testimony was corroborated by the defendant driver, who stated that the car he was driving at the time of the accident belonged to his brother, defendant David Aguayo. Michael stated that at the time of the occurrence, he was on his way to an auto supply store to pick up some parts with which to service his brother's car. David Aguayo testified that he had not requested Michael to work on the car and had no knowledge of Michael's intention to do so.

Michael Aguayo testified that he was proceeding down Harlem Avenue at a rate of 33 to 35 miles per hour and was about two car lengths from plaintiff when he saw her in the center northbound lane. He stated that there was a car next to his, in the center northbound lane, and that this car had slowed down just when Michael had accelerated to cross the 13th Street intersection. Plaintiff entered defendant's lane, running diagonally in a northeasterly direction towards the curb. Michael testified that he hit his brakes and slid into the east curb, thereby slowing his car to a speed of 5 or 10 miles per hour prior to impact. Defendant's car came to a complete halt upon coming into contact with plaintiff.

Following the accident, plaintiff was taken to a hospital, where she was treated for fractures of the pelvic bone and lower back and a

scalp laceration. She remained in intensive care for three days and was then seen on an out-patient basis for several weeks thereafter. Ten weeks after the accident, one of plaintiff's treating physicians, Dr. Dilip Shah, informed her that she should be "gainfully employed." Plaintiff, however, did not return to work for 19 weeks following her injury.

At the close of all the evidence, defendant David Aguayo, the car owner, moved for a directed verdict in his favor. The trial court granted his motion. Upon instruction and deliberation, the jury then found defendant Michael Aguayo liable to plaintiff and awarded her $15,000 for economic damages suffered. The jury further found plaintiff 99% contributorily negligent and, correspondingly, reduced the damage award to $150.

Plaintiff filed a post-trial motion for a new trial, either on all issues or on the issues of liability and damages. Her motion was denied. She now appeals from the order denying her motion.

OPINION

I

■■ Plaintiff's first contention on appeal is that she was denied a fair trial due to the improper admission of and undue emphasis placed on evidence of a "safer alternative," namely, that plaintiff could have crossed Harlem Avenue at the controlled crossing one block north at Roosevelt Road. Plaintiff contends that such evidence should not have been admitted because it misled and confused the jury in its determination of whether plaintiff was contributorily negligent. Defendant maintains that evidence of a safer alternative was admissible as relevant to show whether plaintiff used due care for her own safety, the inquiry underlying the concept of contributory negligence. Our review of the applicable case law convinces us that the safer-alternative doctrine was correctly utilized in the instant case.

■■ A plaintiff is contributorily negligent when she acts without that degree of care which a reasonably prudent person would have used for her own safety under like circumstances, and which action is the proximate cause of her injury. (*Moran v. Aken* (1981), 93 Ill. App. 3d 774, 417 N.E.2d 846.) Generally, the issue of whether plaintiff exercised due care for her own safety is a question of fact for the jury. (*Hartgraves v. Don Cartage Co.* (1976), 63 Ill. 2d 425, 348 N.E.2d 457.) The burden of proving oneself free from contributory negligence rests with the plaintiff. (*Shannon v. Addison Trail High School* (1975), 33 Ill. App. 3d 953, 339 N.E.2d 372.) In Illinois, contributory

negligence is no longer a complete bar to recovery and goes only to diminution of the damage award. *Misch v. Meadows Mennonite Home* (1983), 114 Ill. App. 3d 792, 449 N.E.2d 1358.

■ Where a danger is obvious to a person of ordinary intelligence, the law will charge one with knowledge of it. (*Klimovich v. Crutcher* (1965), 57 Ill. App. 2d 444, 206 N.E.2d 723.) It is incompatible with the exercise of due care for one's own safety and protection to voluntarily expose oneself to danger of which one is aware; ordinary prudent persons do not knowingly place themselves in a position of peril or danger. (*Bitner v. Lester B. Knight & Associates, Inc.* (1974), 16 Ill. App. 3d 857, 307 N.E.2d 136.) The mere fact that one has the right to proceed in a certain manner does not justify exposing oneself to a known hazard in the act of proceeding. *Withey v. Illinois Power Co.* (1961), 32 Ill. App. 2d 163, 177 N.E.2d 254.

■ Plaintiff in the instant case elected to hurry across a busy four-lane thoroughfare during rush hour traffic, under dark and drizzly conditions. She was familiar with the thoroughfare and how heavily trafficked it was at that hour because she was routinely dropped off there every day after work. It is obvious to a person of ordinary intelligence that the hurried crossing of that street under those adverse conditions necessarily involved plaintiff's placing herself in a position of peril. While we do not dispute plaintiff's contention that she had a right to proceed as she did, that right does not alter the fact that proceeding as such showed a failure to exercise due care for her own safety.

■ A person has no right to knowingly expose himself to danger and then recover damages for an injury that he might have avoided by the exercise of some act or precaution. (*Dragstrem v. North Branch Metal Products, Inc.* (1958), 20 Ill. App. 2d 57, 155 N.E.2d 358.) If a person has available to him two different ways of proceeding, one dangerous or hazardous and the other safe, and he consciously chooses the former and is injured as a consequence of his choice, he is contributorily negligent. *Atchley v. Berlen* (1980), 87 Ill. App. 3d 61, 408 N.E.2d 1177.

■ Courts in Illinois have consistently recognized that evidence of the existence of a safer alternative, known to but not chosen by the plaintiff, is properly admissible to show contributory negligence. (*Geraghty v. Burr Oak Lanes, Inc.* (1955), 5 Ill. 2d 153, 125 N.E.2d 47; *Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 396 N.E.2d 1197; *Newton v. Meissner* (1979), 76 Ill. App. 3d 479, 394 N.E.2d 1241; *Klimovich v. Crutcher* (1965), 57 Ill. App. 2d 444, 206 N.E.2d 723.) Whether plaintiff has a choice of routes, and if she had, whether she

chose a safe or unsafe route are questions of fact properly submitted to the jury. (*Geraghty v. Burr Oak Lanes, Inc.* (1955) 5 Ill. 2d 153, 125 N.E.2d 47.) Thus, in determining whether plaintiff was contributorily negligent, the fact finder may consider not only plaintiff's course of conduct but also whether safer alternatives were available. While plaintiff cannot be held contributorily negligent as a matter of law merely because she did not cross in a marked crosswalk, evidence of the existence of an available alternative course of known safety may be taken into consideration by the jury in determining whether plaintiff exercised due care for her own safety. *Newton v. Meissner* (1979), 76 Ill. App. 3d 479, 394 N.E.2d 1241; *Klimovich v. Crutcher* (1965), 57 Ill. App. 2d 444, 206 N.E.2d 723.

Because evidence of safer alternative routes may be considered by the fact finder in determining whether a plaintiff is contributorily negligent, we find that such evidence was properly admitted in the instant case.

■ Plaintiff's next contention on appeal is that she was prejudiced by the giving of repetitive IPI instructions to the jury. Specifically, plaintiff objects to the trial court's giving, at defendant's request, Illinois Pattern Jury Instruction (IPI), Civil, No. 11.01 (2d ed. 1971), because it was prejudicially duplicative of IPI Civil 2d No. A10.03, the instruction tendered by plaintiff. We find that IPI Civil 2d No. 11.01 was complementary to rather than duplicative of IPI Civil 2d No. A10.03, and that the trial court's giving of both instructions was entirely proper.

Plaintiff's instruction No. 8, IPI Civil 2d No. A10.03, provided as follows:

"It was the duty of the plaintiff, before and at the time of the occurrence, to use ordinary care for her own safety. The failure of a plaintiff to use ordinary care for her own safety is known as contributory negligence.

Plaintiff's contributory negligence, if any, does not bar her recovery. However, the total amount of damages to which she would otherwise be entitled is reduced in proportion to the amount of her negligence. This is known as comparative negligence."

Defendant's instruction No. 3, IPI Civil 2d No. 11.01, given over plaintiff's objection, provided:

"When I use the expression 'contributory negligence', I mean negligence on the part of the plaintiff that proximately contributed to cause the alleged injury."

A finding of contributory negligence is dependent on two factors.

First, a person must act without due care for his own safety; and, second, such action must be the proximate cause of one's injury. (*Moran v. Aken* (1981), 93 Ill. App. 3d 774, 417 N.E.2d 846.) IPI Civil 2d No. A10.03, the instruction tendered by plaintiff, instructs on the first factor, namely, plaintiff's failure to use due care. IPI Civil 2d No. 11.01, the instruction tendered by defendant, instructs on the second factor, which relates to the element of proximate cause. In order for a jury to correctly decide the issue of contributory negligence, it must be instructed on both of these factors.

The importance of instructing a jury on proximate cause as well as on contributory negligence is stressed in the "Notes to Use" to IPI Civil 2d Nos. A10.03 and 11.01. The note to No. A10.03 states that "IPI 11.01 must be given with this instruction." Similarly, the note to IPI Civil 2d No. 11.01 states, "This instruction should be used whenever 'contributory negligence' is a jury issue." Additionally, the comment to IPI Civil 2d No. 11.01 cites numerous Illinois cases in support of the proposition that "it is reversible error to omit the element of proximate cause in an instruction defining contributory negligence." Were the court to give IPI Civil 2d No. A10.03 *without* coupling it with IPI Civil 2d No. 11.01, the element of proximate cause would be improperly omitted from the definition of contributory negligence.

Instructions are proper when they convey to the jurors the correct principles of law applicable to the evidence submitted to them. (*Crump v. Universal Safety Equipment Co.* (1979), 79 Ill. App. 3d 202, 398 N.E.2d 188.) The instructions at issue in the instant case conveyed to the jurors the correct principles of contributory negligence, both as to the plaintiff's failure to use due care and as to the requirement that such failure be the proximate cause of plaintiff's injury. Accordingly, the trial court's giving of IPI Civil 2d Nos. A10.03 and 11.01 was proper.

II

■ Having found that the evidence of safer alternatives was properly admitted and that the jury was properly instructed on the issue of contributory negligence, we further find, after reviewing the record as a whole, that the jury's verdict, finding plaintiff 99% contributorily negligent, was not against the manifest weight of the evidence. The facts, as presented above, reveal that plaintiff, by crossing a heavily trafficked thoroughfare at rush hour under dark and drizzly conditions, when a safer alternative route was available, failed to exercise due care for her own safety. The evidence further supports the finding that such lack of due care proximately caused the injuries

plaintiff suffered.

Because plaintiff, both in her post-trial motion and on appeal, seeks a new trial only on either all issues, or on the issues of liability and damages, and will not accept a new trial on the damage issue alone; and, because we find that the verdict on liability was not against the manifest weight of the evidence, we need not address plaintiff's contention that the jury's damage award was erroneous.

## III

Plaintiff finally asserts that the trial court erred by granting defendant David Aguayo's motion for a directed verdict in his favor at the close of the evidence. David Aguayo was the admitted owner of the automobile being driven by his brother Michael at the time of the accident. Under these facts, any liability on David's part would be premised on the theory of agency.

■ On appeal from the granting of a directed verdict for defendant at the close of all the evidence, a reviewing court examines the evidence to determine whether plaintiff has made out a *prima facie* case (*Geiger v. Zikic* (1980), 81 Ill. App. 3d 1016, 401 N.E.2d 1260), and whether, after weighing the evidence, that *prima facie* case has been rebutted or still remains. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 448 N.E.2d 872.) The plaintiff, appealing from a directed verdict in favor of defendant, has the burden of showing that the direction of the verdict was improper. *Simmons v. South Shore Hospital* (1950), 340 Ill. App. 153, 91 N.E.2d 135.

The parties here do not dispute the proposition that the proof of one defendant's ownership of an automobile driven by another defendant establishes a *prima facie* case of agency, which, if not rebutted, will support a judgment for plaintiff. (*Parrino v. Landon* (1956), 8 Ill. 2d 468, 134 N.E.2d 311.) Nor do the parties here dispute that defendant David Aguayo presented "some" evidence to rebut the presumption of agency. What the parties do dispute is whether it was for the trial judge or for the jury to weigh the evidence presented by defendant in order to determine whether he sufficiently rebutted defendant's *prima facie* case.

■ In properly directing a verdict, the trial judge determines, as a matter of law, that there are no evidentiary facts out of which the jury may construct the necessary ultimate fact essential to recovery. (*Home Indemnity Co. v. Reynolds & Co.* (1962), 38 Ill. App. 2d 358, 187 N.E.2d 274.) In the instant case, where plaintiff has established a *prima facie* case by virtue of a presumption, it was for the trial judge to determine that the evidence presented by defendant was sufficient

to burst plaintiff's presumption and support a directed verdict in favor of defendant.

A trial court's ruling on defendant's motion for a directed verdict will not be reversed on review unless it is contrary to the manifest weight of the evidence. (*Hemken v. First National Bank* (1979), 76 Ill. App. 3d 23, 394 N.E.2d 873.) In his testimony, David Aguayo stated that he lent his car to his brother as a favor, that he had no knowledge that his brother was going to do work on the car, that he never requested Michael to work on the car or to get the car repaired, and that during the period in which the car was on loan to Michael, David did not even know if and when Michael was actually driving it. It is not contrary to the manifest weight of the evidence, considering the above testimony, for the trial court to have found that defendant David Aguayo sufficiently rebutted the presumption of agency raised by the plaintiff.

For the reasons stated above, we find that plaintiff has failed to carry her burden of showing that the directed verdict in favor of David Aguayo was improper.

Accordingly, we affirm the decision of the trial court, both as to the jury's verdict on liability and damages and as to the directed verdict in favor of defendant David Aguayo.

Affirmed.

JIGANTI, P.J., and ROMITI, J., concur.