COLONIAL TRUST AND SAVINGS BANK OF PERU, as Ex'r of the Estate of Francesca Rodriguez, Deceased, *et al.*, Plaintiffs-Appellants, v. DAVID D. KASMAR *et al.*, Defendants-Appellees.

Third District   No. 3—89—0034

Opinion filed November 3, 1989.—Rehearing denied December 11, 1989.

Louis L. Bertrand, of Anthony C. Raccuglia & Associates, of Peru (Anthony C. Raccuglia, of counsel), for appellants.

D. Kendall Griffith and Peter G. Panno, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, and Cory D. Lund, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Joliet (Bruce L. Carmen, of counsel), for appellees.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiffs appeal from the judgment of the circuit court of La Salle County, denying their motions for a new trial and for a judgment notwithstanding the verdict in their wrongful death and per-

sonal injury actions for damages sustained in a collision between the plaintiffs' car and the defendant's truck. On December 17, 1986, at approximately 4 p.m., Maria Rodriguez (now Maria Perez), accompanied by her mother, Francisca Rodriguez, and her sister, Christina Rocha, was driving south on U.S. 251 towards its intersection with La Salle Road in Peru, Illinois. At that intersection, which is the scene of the collision, U.S. 251 has two principal southbound lanes with additional left- and right-turn lanes for traffic preparing to enter La Salle Road and two principal northbound lanes, also with additional left- and right-turn lanes for traffic preparing to enter La Salle Road. Islands divide the north and southbound lanes on both sides of the intersection. The intersection is controlled by traffic lights, including left-turn signals for traffic turning onto La Salle Road. "Left Turn Yield on Green" signs are displayed to both the north and southbound traffic. The speed limit for the north and southbound traffic is 45 miles per hour.

Approximately 360 feet south of this intersection is another intersection of U.S. 251 with entrance and exit ramps for Interstate 80 traffic. Continuing south from the collision intersection, U.S. 251 upgrades to pass traffic over Interstate 80.

Maria Perez testified that immediately prior to her entering of the intersection to turn left onto La Salle Road, she saw the defendant's truck coming up "the hill." She could not give an estimate as to the speed of the truck. She turned her left-turn signal on and proceeded into her turn. She was travelling at approximately 10 to 15 miles per hour. She testified that she had the green arrow and that the arrow did not change as she entered the intersection. To travel through the intersection, her car had to pass through the width of the island divider and two northbound lanes of traffic. When her car had reached the eastmost of the northbound lanes, she looked up and saw the radiator of the defendant's truck through the passenger window.

The driver of the truck, David Kasmar, testified that on the day of the collision, it had been raining off and on, and the roadway was wet. He testified that as he was coasting down the hill towards the collision intersection, he had a solid green light. He was travelling at approximately 30 miles per hour as he crested the hill. The tractor-trailer which he was driving weighed approximately 21,200 pounds. He testified that he first saw Perez's car when it was in the left-turn lane and when he was approximately 200 feet south of the collision intersection. He estimates that his speed at that time was 25 miles per hour.

Kasmar testified that when he was approximately 120 to 150 feet

from the intersection, the light was still green for northbound traffic, and Perez's car was proceeding to turn onto La Salle Road. Kasmar stepped on the brake pedal. He testified that it took between 1½ to 2 seconds for the brakes to lock up and that the rear brakes were the first to lock up. The truck skidded into Perez's car, striking its right front fender and right door. Kasmar estimated that his speed at impact was 20 miles per hour.

Perez's mother, Francesca Rodriguez, who was sitting in the front passenger's seat, was killed instantly. Perez's sister, Christina Rocha, who was sitting in the back seat, suffered serious injuries. She is now a paraplegic. Perez also suffered injuries and was hospitalized for nearly a week.

Eric Sartain witnessed the collision. He first noticed Kasmar's truck when he passed through the intersection south of Interstate 80. When the light turned green at that intersection, Sartain proceeded ahead of Kasmar's truck. Sartain passed over Interstate 80 and prepared to make a left turn onto Interstate 80 at the intersection just south of the collision intersection. While he was waiting at the red light to make his left turn, Kasmar's truck passed by at approximately 30 to 35 miles per hour. He testified that light at the collision intersection ahead of Kasmar's truck was solid green. Kasmar's truck was through the intersection where Sartain was stopped when Perez's car began making its left turn. Sartain heard the locking of Kasmar's brakes and saw smoke coming from the truck's back tires. Sartain estimates that Kasmar's truck was 20 feet from the collision intersection when he heard the brakes lock up. He had no estimate of the speed of the vehicles upon impact. He stated that Perez's car split in half, and the truck jackknifed. The entire incident took a couple of seconds.

George Brink was driving a truck in the vicinity of the accident. He testified that he had just exited Interstate 80 and was entering the lane used for merging traffic from Interstate 80 onto northbound U.S. 251 when he first saw Kasmar's truck in his rear view mirror. Brink estimates that Kasmar was 200 to 300 yards behind him. Brink was travelling in the merging lane at approximately 15 miles per hour. When Brink was halfway between the exit ramp and La Salle Road, he noticed that Kasmar was now approximately 100 yards behind him. He estimated that Kasmar was travelling between 30 to 50 miles per hour. The light at the collision intersection was solid green.

Brink did not see or hear the collision. He first became aware of the collision when he saw the severed front end of the Perez car directly in front of him across La Salle Road.

Peru police department officer Robert Thompson investigated the accident. He measured 114 feet of skid marks from the truck, but he could not tell whether they were left by the tractor or the trailer. The rear section of the Perez car rested 116 feet north of the intersection. The front section of the car was facing southeast and was near Kasmar's truck.

Officer Thompson spoke to Maria Perez at the hospital on the day of the accident. He testified that she was lucid at the time of their conversation. He asked Perez whether she had a green light or a green arrow, and she answered that she had a green light.

The circuit court did not permit the plaintiffs' accident reconstruction expert, Charles C. Roberts, to testify. The plaintiffs' offer of proof indicated that Roberts would have testified that at the start of his skidmarks, the defendant was travelling at a minimum speed of 57.1 miles per hour. He also would have testified that at the time of impact with the plaintiffs' vehicle, the defendant was travelling at a minimum speed of 50.87 miles per hour and that the force of the impact caused the rear section of the plaintiffs' car to project from the point of collision at a minimum speed of 45.8 miles per hour. He would further have testified that the assertions that the truck was travelling at a speed of 25 miles per hour prior to the time of braking and 20 miles per hour at the time of impact are contrary to the laws of physics.

The case went to the jury, which returned a verdict in favor of the defendants on all counts. Judgment was entered on the verdict. After the circuit court denied the plaintiffs' motions for judgment notwithstanding the verdict and for a new trial, the plaintiffs brought this appeal.

The plaintiffs argue that the circuit court committed reversible error in refusing to permit their accident reconstruction expert to testify. We disagree.

■■ ■ The supreme court of Illinois has held that it is reversible error to admit into evidence accident reconstruction testimony on the issue of the speed of a vehicle where eyewitness testimony is otherwise available, because the speed of a vehicle is not a matter beyond the ken of the average juror. (*Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 359, 392 N.E.2d 1, 3; see also *Trillet v. Bachman* (1981), 96 Ill. App. 3d 477, 481, 421 N.E.2d 580, 583-84.) In this case there was eyewitness testimony as to the speed of the truck. Kasmar testified that he was travelling at approximately 30 miles per hour as he crested the hill, at approximately 25 miles per hour when he was 200 feet from the collision intersection and at approximately

20 miles per hour at the point of impact. Sartain estimated the speed of Kasmar's truck to be 30 to 35 miles per hour as it passed through the intersection 360 feet south of the accident intersection. Brink estimated Kasmar's speed to be between 30 and 50 miles per hour just prior to Kasmar's passing Brink's truck. In addition to this eyewitness testimony, the jurors had the following evidence: photographs and diagrams of the accident intersection and the damaged vehicles, testimony as to the length of the skid marks and condition of the roadway, the stipulation that a vehicle travelling at 25 miles per hour travels 37.5 feet in one second or 1½ times its speed in feet per second, and the stipulation that a vehicle travelling 25 miles per hour comes to a complete stop after it fully applies its brakes in 51.5 feet. Considering all the evidence available to the jurors regarding the speed of the truck (*Trillet,* 96 Ill. App. 3d at 481, 421 N.E.2d at 584), particularly the eyewitness testimony (*Peterson,* 76 Ill. 2d at 359, 392 N.E.2d at 3), we must conclude that the circuit court did not err in refusing to admit accident reconstruction testimony into evidence.

■ The plaintiffs argue collaterally that it was unfairly prejudicial, in light of the court's refusal to admit such expert testimony, for the defendant to comment in closing argument that the physical evidence of skid marks, age of Perez's car, weight of Kasmar's truck and the post-impact condition of the car supported Kasmar's testimony. The plaintiffs argue that contrary to Kasmar's testimony, their expert would have testified that the physical evidence supported the conclusion that Kasmar was driving in excess of 57 miles per hour at the point where the skidmarks began. We note, however, that by failing to raise any objection to defense counsel's comment at the time that it was made, the plaintiffs waived any error arising from the remark. (*Friedland v. Allis Chalmers Co.* (1987), 159 Ill. App. 3d 1, 4, 511 N.E.2d 1199, 1202.) We will not, therefore, decide whether such comment was unfairly prejudicial.

■ ■ Finally, the plaintiffs argue that the circuit court erred in failing to grant their motions for a directed verdict, for a judgment notwithstanding the verdict and for a new trial. Again, we disagree. The supreme court of Illinois has stated that "verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) We note that it is particularly within the province of the jury to determine whether a driver's acts or omissions fell below the applicable standard

of care. (*Haas v. Tomaszek* (1978), 56 Ill. App. 3d 656, 659, 371 N.E.2d 1240, 1243.) In this case the plaintiffs charge that Kasmar failed to keep a proper lookout, failed to keep his vehicle under control and failed to drive at a careful speed. We note, however, that in this case there is ample evidence on either side to permit the case to be submitted to the jury. Therefore, we conclude that the circuit court did not err in denying the plaintiff's motions for a directed verdict, for a judgment notwithstanding the verdict and for a new trial.

For these reasons we affirm the judgment of the circuit court of La Salle County.

Affirmed.

HEIPLE and SCOTT, JJ., concur.