BLAINE W. OLSON, Adm'r of the Estate of Blaine W. Olson, Jr., Deceased, Plaintiff-Appellant, v. BELL HELMETS, INC., Defendant-Appellee.

First District (1st Division)   No. 1—88—3381

Opinion filed March 6, 1990.

Mullen, Minella & Chase, of Chicago (John C. Mullen and Cynthia L. Chase, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Charles A. Hornewer, and Gerald Haberkorn, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Blaine Olson, Jr., died from head injuries after his motorcycle collided with a pickup truck. Olson's estate brought a strict liability action against defendant Bell Helmets, Inc. (Bell), manufacturer of the helmet Olson was wearing. After a jury trial, judgment was entered in favor of Bell. The estate appeals, arguing that the trial court erred in excluding the deposition testimony of a reconstruction witness and refusing the jury's request to see the helmet during deliberation. For the reasons below, we affirm.

On November 14, 1978, Blaine Olson, Jr., was riding his motorcycle northbound on State Street in Belvidere, Illinois. In the intersection of State and 9th Street, Olson struck the driver's side of a pickup truck driven by Linda Ferguson. Olson suffered a broken jaw, a skull fracture at the base of the brain, and brain stem injury. He was taken, comatose, to a hospital, where he died a week later without regaining consciousness. Olson's estate brought a negligence claim against Ferguson, which was subsequently dismissed, and a strict liability claim against Bell, alleging defective design of Olson's helmet.

Before trial, Bell filed a motion *in limine* to exclude the deposition testimony of Howard Pearson, a Belvidere police officer who had conducted experiments to reconstruct the collision. Bell argued that there was competent eyewitness testimony and that Pearson was not properly qualified as an expert. The eyewitness, Kathleen Janisch, stated in her deposition that the impact of the collision had thrown Olson over the truck. Pearson, however, stated the opinion, based on his reconstructions and personal experience as a motorcycle rider, that Olson's head had struck a glancing blow to the side of the truck and could not have flown over the top of the truck. But Bell's counsel indicated that Janisch would not testify that Olson had flown over the truck. The trial court ruled to exclude Pearson's deposition, but stated that if Janisch testified that Olson had flown over the truck, the estate would be allowed to use Pearson's opinion for rebuttal.

At trial, the estate called as an expert Dr. Igor Paul, professor of engineering at MIT. Dr. Paul testified that the helmet was comprised of a hard fiberglass shell that was designed to diffuse the energy of

an impact through the helmet liner. Dr. Paul stated that in his opinion, the shell was too thin and allowed the energy of the impact to pass directly to the wearer's head, and that one additional layer of fiberglass would have made the helmet sufficiently strong to perform as intended.

Dr. Paul also testified that the damage to the right side of the helmet indicated that the force of the impact came from a glancing blow, rather than head on, at a speed of approximately 20 to 25 miles per hour, and that Olson did not fly over the handlebars of the motorcycle. Dr. Paul testified that in his opinion, given the severity of the impact, Olson would have survived the collision with an adequate helmet.

Bell called Dr. James Newman, an expert on the design and construction of motorcycle helmets. Dr. Newman gave the opinion that Olson's injuries were the result of a head-on impact at a speed of about 35 to 45 miles per hour, and that given the direct head-on impact, no helmet would have prevented Olson's injuries.

Bell also called Kathleen Janisch. She was driving southbound on State Street, approaching the 9th Street intersection, when the collision occurred. Janisch saw the collision from the passenger's side of Ferguson's truck and did not see the motorcycle at impact. But she heard the collision, and in response to questions by the court, specifically stated that she saw Olson fly about four or five feet above the truck, somersault over the truck, and land on his head and shoulders.

When the estate sought to use Pearson's deposition to rebut Janisch, however, the trial court reversed its earlier ruling and refused to allow Pearson's testimony. Counsel for the estate refused the trial court's offer to recall Janisch for further questioning in light of the reversal.

During deliberation, the jury asked to see the helmet. The trial court refused the request, on the grounds that the helmet's condition had been altered since the collision. The jury returned a verdict in favor of Bell, and judgment was entered. The trial court denied the estate's post-trial motion, raising the issue of the exclusion of Pearson's deposition and the refusal of the jury's request to see the helmet. The estate appeals.

■■ The estate argues that it was substantially prejudiced when the trial court reversed its earlier ruling to allow Pearson's deposition testimony to rebut Kathleen Janisch. We disagree. It is well settled that a reconstruction expert may not be called to impeach a competent, credible eyewitness (*Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 359, 392 N.E.2d 1; *Misch v. Meadows Men-*

*nonite Home* (1983), 114 Ill. App. 3d 792, 799-800, 449 N.E.2d 1358), and that it is reversible error to admit reconstruction evidence on an issue within the ken of the average juror. *Peterson*, 76 Ill. 2d 353, 392 N.E.2d 1; *Colonial Trust & Savings Bank v. Kasmar* (1989), 190 Ill. App. 3d 967, 546 N.E.2d 1112.

Although Janisch did not see the impact, she specifically stated that after the impact, Olson "somersaulted" over the top of the truck. Janisch's testimony, which contradicted neither common sense nor laws of physics, implied that Olson could not have survived the collision with any helmet. Pearson's opinion that Olson could not have flown over the truck, the only portion of his deposition that the trial court originally promised to admit, would not have been admitted to explain a matter beyond the understanding of the average juror. Rather, its only purpose would have been to rebut Janisch's perception of events. Had the trial court allowed Pearson's testimony, it would have committed reversible error (see *Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 359, 392 N.E.2d 1; *Colonial Trust & Savings Bank v. Kasmar* (1989), 190 Ill. App. 3d 967, 546 N.E.2d 1112), and it avoided doing so by excluding the testimony.

The estate contends, however, that Janisch was not competent because she did not see whether Olson's head hit the truck directly or at an angle. But Janisch was not called to testify to that issue; she was called to testify to what she observed, and the record supports the conclusion that Janisch had the capacity to observe, recall, and communicate (see *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 239-40, 529 N.E.2d 525), and was therefore competent.

The estate further contends that Janisch was not credible because she stated in her deposition that she was about two blocks from the intersection when the collision occurred, but stated at trial that she was about two houses away. The estate also points to the fact that she was related to the driver of the pickup truck, who is no longer a party. But the estate's counsel made no attempt to impeach Janisch with the inconsistency or potential bias during cross-examination. Instead, counsel firmly reestablished Janisch's testimony that Olson had somersaulted over the truck. After Pearson's testimony was excluded, counsel refused the trial court's offer to recall Janisch.

The estate argues that recalling Janisch and attempting to impeach her after establishing her testimony would have been ineffective without Pearson's deposition, but this argument relies on circular reasoning: impeaching Janisch's credibility depended on evidence that was inadmissible until Janisch's credibility was impeached. The estate

had the opportunity to impeach Janisch's credibility, and the means, independent of Pearson's testimony. The jury had the opportunity to observe Janisch and determine for itself whether she was credible. The estate now seeks a redetermination of her credibility, and we shall not second guess the trier of fact.

In summary, we hold that reconstruction evidence may not be used to rebut the testimony of an eyewitness unless he or she is found incompetent or incredible, and because the admissibility of such evidence depends on a finding of incompetence or incredibility, it may not be used to establish those factors. Here, Pearson's reconstruction evidence was inadmissible to rebut Janisch's competent and credible testimony concerning what she saw. Nor was Pearson's testimony admissible to establish that Janisch was not a credible witness, because its admissibility depended on an independent determination that Janisch was not credible.

Because Pearson's testimony was inadmissible, the estate was not prejudiced by its exclusion. We further note that excluding Pearson's testimony did not prevent the estate from presenting its theory of the nature of Olson's injuries, as Dr. Paul stated that given the damage to the helmet, Olson's head struck a glancing blow. The trial court's ultimate decision to exclude Pearson's testimony was correct.

▄▄ The estate also argues that it was error to allow the so-called "state of the art" defense asserting that no other helmet available would have offered more protection than the one Olson wore, and that the trial court abused its discretion in refusing the jury's request to examine the helmet during deliberation. The estate did not properly preserve the first issue, however, and cited no authority to support the second. Accordingly, both issues were waived. See *Village of Carpentersville v. Pollution Control Board* (1988), 176 Ill. App. 3d 668, 531 N.E.2d 400; *Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237.

Even had the issues not been waived, the estate could not prevail. The estate challenges a single question asked to rebut testimony that there were more feasible helmet designs available, and the jury was properly instructed that "state of the art" testimony was not a defense to defective design. In addition, the trial court was within its discretion to refuse the jury request because the jury was allowed to see the helmet during the trial, and the estate's own expert admitted that the condition of the helmet had been altered since the collision due to examination by the experts.

In conclusion, the estate's arguments are without merit. The trial court correctly excluded Pearson's deposition testimony because it

was inadmissible to rebut competent, credible eyewitness testimony. The remaining arguments were waived and did not merit reversal in any event. Accordingly, we affirm the judgment of the trial court.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.