ALICE F. MONIER, Plaintiff-Appellant, v. LEE F. WINKLER, Defendant-Appellee.

Fourth District   No. 4—86—0396

Opinion filed July 23, 1987.

Zimmerly, Gadau, Selin & Otto, of Champaign, for appellant.

Heyl, Royster, Voelker & Allen, of Springfield (Adrian E. Harless, of counsel), for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Alice F. Monier, brought an action to recover damages occasioned by the alleged negligent medical care and treatment rendered to her by the defendant, Lee F. Winkler, on April 20, 1978, and June 15, 1979. After a jury trial in the circuit court of Sangamon County, a verdict was returned in favor of the defendant upon which the court entered judgment. The plaintiff filed a post-trial motion alleging errors in the following respects: (1) the verdict was against the manifest weight of the evidence; (2) the defendant's office records were hearsay and should not have been admitted into evidence; (3) the jury was improperly instructed on the issues; and (4) the jury was improperly instructed on the standard of care. We affirm.

Plaintiff alleged in her complaint that she sought medical treatment from the defendant for a mole on her left leg which had been changing in size and shape. Defendant did not treat her for this problem. Plaintiff later discovered the condition was a malignant melanoma for which she required surgery. Plaintiff returned to the defendant for post-operative care and defendant diagnosed her condition at that time as arthritis. Plaintiff required further surgery for the removal of lymph nodes resulting in disfigurement and disability in her left leg.

The testimony at trial presented a direct conflict between what plaintiff claims she told defendant were her complaints when she sought his help and what defendant recalls being told. Plaintiff testified that in the early spring of 1978 she was sick and very tired much of the time and she also noticed that a mole on her left leg, which she had had all of her life, was beginning to get darker, larger and crusty. She called it to the attention of her husband and they decided she should see the defendant about it as he had been her primary physician since 1957.

Plaintiff made an appointment to see defendant for April 20, 1978. Prior to her appointment, she testified, she also experienced some back problems. She testified that when she reported for her appointment on April 20, defendant's office nurse asked her why she was there and plaintiff testified she told her she had been feeling sick and had this mole that was changing.

When plaintiff saw defendant on April 20, she testified she told him about the mole on her left leg and the fact it had been getting bigger and darker and was developing a crust. She testified she did not recall telling the defendant about any other problems, specifically those of her back. She did recall defendant had her lie on her back and he checked her gallbladder.

Plaintiff testified that during the course of the examination, defendant sat at his table and wrote as he always did when he examined her. Defendant did not examine her mole. Plaintiff left defendant's office without asking him to examine her mole and she never requested him to look at it again. She testified she had confidence in defendant and since he had previously performed surgery on her leg and, hence, would have seen the mole at that time, there was nothing to worry about. Defendant did not, however, remove plaintiff's slacks on April 20 in order to see the mole.

Plaintiff testified that during the summer of 1978 her symptoms grew worse. She stated she did not seek further medical attention, however, because she was confident in defendant. In September of 1978 plaintiff went with her husband to the Mayo Clinic, where he was being treated for a back injury, and while there she made an appointment for a complete physical examination. She stated that she did not make the appointment because of any fear about the mole because she assumed that if defendant did not want to look at it back in April, it presented no problem to her health.

During the course of plaintiff's physical at Mayo, the examining doctor noticed the mole and referred her to a plastic and reconstructive surgeon. The surgeon, Dr. John Woods, diagnosed the mole as malignant and surgically removed it. She was instructed as part of her post-operative care to conduct self-examinations for lumps in various susceptible areas of her anatomy.

Plaintiff returned to Springfield, although she saw Dr. Woods for follow-up care in January 1979 and again on June 1, 1979. At neither of these times was any spread of the cancer noted.

Plaintiff testified that on June 10, 1979, she noticed a lump in her left groin and made an appointment to see defendant, informing him by telephone that she had been treated for a malignant mole and had found a lump in her groin.

On June 15, 1979, defendant examined plaintiff, noted a mass in the area where she complained of a lump and diagnosed arthritis. He prescribed medication for the arthritis.

Plaintiff testified she sought no other medical help, although the lump in her groin increased in size throughout July and August of 1979. On September 10, 1979, she returned to the Mayo Clinic for her regularly scheduled follow-up visit. On September 11, 1979, Dr. Woods removed the lymph glands in her left leg. Since that time, all tests of the plaintiff have been negative for cancer.

Defendant testified he examined the plaintiff in his office on April 20, 1978. As was his customary practice, he took a history from the

plaintiff himself and did not rely on his office nurse to take the patient's history. On April 20, the history plaintiff gave him consisted of two complaints—abdominal pain and lower back pain. She made no other complaints. Based on these complaints, defendant examined the plaintiff's abdomen and back. He testified that he ruled out any serious problems after his examination. In order to conduct his examination he did not feel it was necessary to remove any of the plaintiff's garments.

Defendant testified that on April 20, 1978, plaintiff did not make a complaint to him of a mole or changing mole on her left thigh. He further testified that on that date he made a written record of her complaints. The record was identified as defendant's exhibit No. 2 and admitted into evidence.

Defendant testified he next saw plaintiff on June 15, 1979. The plaintiff told him at that time of the surgical removal of a melanoma on her left thigh and complained about some pain on the side of her left leg. She did not make a complaint of a lump in her groin. Defendant examined the groin area of her left leg anyway because he always checked in the groin for recurring cancer when a cancer problem has been reported. During his examination of the plaintiff's groin, he found nothing other than some thickness in the area of an old scar where he had previously performed a vein stripping procedure for her in 1964. Specifically, he found no nodes, which indicated there was no obvious spread of cancer to any lymph nodes in the area examined.

Both plaintiff and defendant presented testimony from expert witnesses. These physicians testified that in the absence of a complaint concerning the mole on the first visit to defendant on April 20, 1978, there was no duty to diagnose or treat the mole and, hence, no malpractice occurred. The plaintiff's expert, Dr. Emerson Day, also testified there was a deviation of the standard of care in defendant's examination of plaintiff for lower back pain because he did not remove her slacks. If he had done so, he would have seen the mole himself and would have examined it due to its discoloration. Dr. Day also gave his opinion the defendant should have had a better communication system established between his nurse and himself for the relaying of patient complaints, assuming plaintiff told the nurse about the mole.

Defendant's expert, Dr. Charles Metzmaker, testified, however, that there was no deviation from the standard of care in defendant's back examination of plaintiff. He also found no deviations in defendant's method for obtaining patient history where defendant testified he always obtained patient history himself and did not rely on the

nurse to relay information to him. Defendant's testimony was that he followed that method in this case.

As for the examination on June 15, 1979, Dr. Day testified the defendant deviated from the standard of care in not discovering the lymph nodes, assuming there was a diagnosable involvement with the nodes in the plaintiff's groin at that time. He conceded this assumption contradicted defendant's notes of the examination and that he was in fact "second guessing" the defendant. Further, he testified the surgery performed at Mayo Clinic in September 1979 was the same surgery which would have been performed if the lymph nodes had been diagnosed in June. As there has been no further spread of the cancer since that time according to the tests performed on plaintiff, Dr. Day conceded that the delay from June to September made no difference in the plaintiff's outcome.

Testimony of plaintiff's treating physician from Mayo Clinic, Dr. Woods, was offered by the plaintiff. That testimony contained the damaging statement that plaintiff told him when he first saw her in September of 1978 that the mole on her thigh had been getting bigger for 1½ to 2 years prior to that date. Plaintiff's expert, Dr. Day, was forced to admit that if that was the case, sufficient time had already passed prior to the plaintiff's office visit with the defendant in April of 1978 to make the mole not then curable.

■ ■ The standard to be applied to determine whether a jury verdict should be set aside and a new trial ordered requires the plaintiff to establish that the verdict is against the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32.) Manifest weight of the evidence is defined as that weight which is clearly evident, plain and indisputable. (*Anderson v. Beers* (1979), 74 Ill. App. 3d 619, 623, 393 N.E.2d 552, 555.) A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based on the evidence. 74 Ill. App. 3d 619, 623, 393 N.E.2d 552, 555.

■ The complaints which plaintiff actually made to defendant are the heart of the issue here, and it is clear there is a conflict in the evidence. A finding by the jury that the defendant's version of events is more believable is not against the manifest weight of the evidence where there is also the presence of defendant's records made at the time the complaints were made to him which bolster his testimony. The testimony of Dr. Woods, presented by the plaintiff herself, that plaintiff told him the mole had been changing for 18 months to 2 years, and the fact that plaintiff went back to defendant for post-op-

erative care in June of 1979 after she claims that he missed the diagnosis of the mole, imply she did not actually tell him about the mole in April of 1978, possibly because she did not feel concern about it at a time when she had other aches and pains.

The testimony concerning the June 15, 1979, visit to defendant, in which defendant did not diagnose any lymph node problems, did not establish there was anything present other than what defendant found on that day—old scar tissue and evidence of arthritis. Thus, the jury's verdict in favor of defendant was not against the manifest weight of the evidence.

A critical factor in the jury's determination of liability on the April 20, 1978, visit was what the plaintiff actually related to defendant as her complaints. Defendant's testimony concerning the complaints she made that day was based on his records contained in exhibit 2 and the fact that there is no complaint of a mole contained therein, as he has no recollection of the complaints made that day other than what was stated in his records.

■ Plaintiff claims the admission of these records was hearsay and she was severely prejudiced by their admission. A doctor's written report has historically been considered hearsay and has not been admissible into evidence. (*Oard v. Dolan* (1926), 320 Ill. 371, 151 N.E. 244.) However, more modern authority exists for the admissibility of medical records under the business records exception to the hearsay rule after a proper foundation has been laid. *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140; *Casey v. Penn* (1977), 45 Ill. App. 3d 573, 360 N.E.2d 93.

A proper foundation for the admission of business records consists of the following elements:

1. The record was made in the regular course of business;

2. The record was kept in the regular course of business;

3. The record was made at or near the time of the matter recorded;

4. The record was made by a person within the business with knowledge of the acts, events, conditions, opinions, or diagnosis appearing in it. See Graham, Cleary and Graham's Handbook of Illinois Evidence sec. 803.10, at 571-72 (4th ed. 1984).

■ The foundation was laid in this case where defendant testified: that it was his practice to make records of patient visits and complaints; the patient's records were kept in the regular course of his practice; the office notes were made at the time the defendant was talking to the patient or shortly after he leaves the examining

room; and the office notes were made by the defendant, who had knowledge of the patient's complaints and his findings and diagnosis. The same procedure was testified to with respect to the office notes admitted by the trial court.

The plaintiff's argument that the jury should not have been allowed to see the notes as it only increased their prejudicial effect against her is equally without merit. The defendant was extensively examined and cross-examined about the notes and it was only fair for the jury to see them.

■ Plaintiff has also alleged error in the failure of the trial court to give the jury instruction which she submitted in two forms pertaining to the issues to be decided. (Illinois Pattern Jury Instructions, Civil, No. A20.01 (2d ed. Supp. 1981) (hereinafter IPI Civil 2d (Supp. 1981)).) The trial court refused both of plaintiff's tendered instructions and gave the issues instruction tendered by the defendant instead.

Plaintiff's tendered instruction No. 20 included the claim that the defendant was negligent in failing to establish office procedures in which patient complaints would be communicated by his nurse to him. Her instruction No. 20A included the claim that defendant was negligent in failing to obtain a proper history by any means. Defendant's instruction No. 5, which was the instruction given, included the claim that the defendant was negligent in failing to obtain a proper history of the plaintiff's condition. The plaintiff claims the giving of defendant's instruction instead of one of the ones which she tendered was error because the defendant's instruction failed to specify for the jury's consideration the issue of all means of history taking, including the failure to have a system by which information communicated to his nurse would be communicated to defendant.

The issues to be presented for the jury's consideration in this case are framed by count I of the plaintiff's amended complaint. These allegations state in pertinent part:

> "That notwithstanding his duties in the premises, Defendant failed to use that degree of skill and care in the treatment of Plaintiff's condition as would be expected of a licensed medical practitioner in the same or similar communities in which Defendant was practicing, in one or more of the following ways:
> ***
>
> b. failed to take proper history of Plaintiff's condition on each of the occasions when Defendant attended Plaintiff;
> ***

e. failed to inform himself of the possible nature and course of Plaintiff's disease so that he could properly have prepared to examine plaintiff;

f. failed to heed the history of the Plaintiff's condition."

The amended complaint speaks in terms of failure to take a proper history but does not make any specific allegation with respect to the failure to have an office procedure whereby complaints are relayed from the nurse to the defendant. The more specific issue was but a larger part of the general allegation pertaining to the defendant's alleged failure to take a proper history.

The instruction tendered by the plaintiff was properly refused because it emphasized only one facet of the evidence. Where instructions single out a particular item of evidence and such instructions are refused, no prejudice exists if the jury is otherwise adequately instructed as to the issues. *First National Bank v. Illinois Central Gulf R.R. Co.* (1978), 62 Ill. App. 3d 36, 378 N.E.2d 1329.

The issue of the failure to take a proper history was included in the instructions and the additional language requested by the plaintiff was not necessary. The instructions given encompassed the taking of the history by any source. Further, the actual evidence indicated the defendant's normal procedure was to take the history himself, not relying on a nurse, and that, in fact, he did take the history from the plaintiff himself in this case. Thus, the jury was properly instructed.

■ Plaintiff's final assignment of error involved the giving of IPI Civil 2d No. 105.01. Plaintiff had tendered the instruction in a modified form, omitting wording dealing with the locality rule. This instruction was refused and the one tendered by the defendant, setting forth IPI Civil 2d No. 105.01 in its entirety, was given instead.

Plaintiff contends that the wording of No. 105.01 requiring that a physician should be held only to the standards of doctors practicing in a similar locality was improper in this case as both expert witnesses and the defendant himself testified that the standard for the diagnosis and treatment for melanomas was a national minimum standard. Plaintiff argues that giving the instruction regarding a local standard only served to emphasize the fact her expert witness was from Northbrook while both the defendant and his expert were from Springfield, thereby prejudicing her case in the eyes of Springfield area jurors. She claims the locality instruction was of no assistance to the jury and only served to confuse it as to the applicable standard of care.

The evidence in this case affirmatively established that the applicable standard for physicians dealing with plaintiff's complaints was the same nationwide. There was no need for the jury to consider the

standard in Springfield in deciding the liability of the defendant. It was error to include the locality rule in the instructions to the jury, but we fail to see how the plaintiff was harmed thereby. If the standard of care to be considered by them was the same in Springfield as it was everywhere else, the opinions of plaintiff's expert who practiced outside of Springfield were entitled to the same credibility as were the opinions of defendant's expert. However, the opinions given by the experts in this case differed from each other not due to the locality in which they practiced and the standards which they were required to follow there, but due to the facts which they assumed in forming their opinions. Therefore, their credibility would be considered by the jury in terms of which set of facts relied upon were found by the jurors to be believable.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

SPITZ, P.J., and LUND, J., concur.