HARRY LEVIN, Plaintiff-Appellee, v. WELSH BROTHERS MOTOR SERVICE, INC., Defendant-Appellant.

First District (2nd Division) No. 87—114

Opinion filed December 1, 1987.

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, Peter J. Magnani, Raymond Lyons, and Lloyd E. Williams, Jr., of counsel), for appellant.

Edward J. Kionka, of Murphysboro, and Paul B. Episcope and Thomas D. Fazioli, both of Chicago, for appellee.

JUSTICE STAMOS delivered the opinion of the court:

In this action for personal injuries, defendant Welsh Brothers Motor Service, Inc. (Welsh), appeals from the judgment for $797,860 entered against it by the circuit court of Cook County on a jury verdict in favor of plaintiff Harry Levin (Levin), and from the order denying Welsh's post-trial motion. The case involves a collision between Welsh's tractor-trailer and Levin's passenger automobile that occurred on March 21, 1979, in Morton Grove, Illinois.

On liability, Welsh contends that (1) the jury's findings that negligence by Welsh was a proximate cause of Levin's injuries, and that

82% of the total proximately causal negligence was attributable to Welsh, were against the manifest weight of the evidence, and (2) the trial court committed reversible error by (a) prohibiting Welsh's accident reconstruction expert from testifying, (b) refusing to declare a mistrial when Levin's counsel advised the jury that a verdict for Levin would be precluded if a special interrogatory were answered affirmatively, and (c) giving duplicative verdict forms that allegedly encouraged a verdict for Levin.

On damages, Welsh contends that (1) the jury's assessment of damages was excessive and against the manifest weight of the evidence; (2) the trial court committed reversible error by (a) permitting Levin's former employer to testify as to what Levin might have earned if Levin had not been injured, (b) prohibiting Welsh from presenting surrebuttal testimony as to Levin's medical condition, and (c) refusing to strike testimony by Levin's neuropsychologist as to the alleged possibility of a causal relationship between the accident and Levin's diabetes; and (3) the trial court erred in giving instructions and verdict forms that permitted an award of damages for future orthopedic expenses in the alleged absence of evidence as to such expenses.

For the reasons set forth hereinafter, we affirm.

FACTS

On the morning of March 21, 1979, Levin, a commissioned salesman, was driving his passenger automobile northward on Waukegan Road, in Morton Grove, Illinois, just north of Emerson Road and approaching the Avon Industries plant. As he began to draw abreast of the Avon driveway while traveling about 35 miles per hour in the middle lane of three lanes, a tractor-trailer rig being driven southward on Waukegan Road by a driver for Welsh began a slow left turn across the northbound lanes in front of Levin and into the Avon driveway. Though Levin quickly jammed on his brakes, his car did not stop in time, and his car slid into the rear side portion of the trailer. The tractor-trailer combination was 55 feet long. On the morning in question, it carried a 35,000- to 40,000-pound shipment.

The truck driver testified as follows: He stopped in a left-turn lane and signaled before beginning his turn. He turned while in first gear, which would permit a maximum speed of 10 miles per hour. He had a clear view southward along Waukegan Road before beginning his turn, and there were no vehicles between him and the stoplight at Emerson Road, about 450 feet away, as he began his turn. After his tractor had entered the Avon driveway, he heard a noise that later

proved to be the sound of Levin's car crashing into the trailer's rear wheel area.

Levin testified that he was 70 to 80 feet from the truck when it began its turn; that he did not believe that the truck had made a full stop before turning; and that he noticed no turn signals on the truck.

Skid marks 56 feet long and attributable to Levin's car were found on the road after the collision. Levin was injured in the collision and hospitalized for 61 days. While hospitalized, he was given physical therapy so that he might relearn to walk and feed himself. After release, he continued to receive outpatient therapy. He also received therapy at the Rehabilitation Institute of Chicago, where he was fitted and refitted with orthotic devices that allowed him to ambulate. All the several medical professionals who treated Levin testified that they found signs of brain damage that manifested itself in right-side weakness, facial drooping, memory deficits, and other phenomena.

At trial, much medical evidence and evidence regarding Levin's past and projected earnings were offered, as well as extensive evidence about the details of the collision and other matters. Additional facts derived from such evidence will be referred to as pertinent during the following discussion.

OPINION

1. MANIFEST WEIGHT OF EVIDENCE: LIABILITY

On the question whether the jury's verdict was against the manifest weight of the evidence, Welsh's brief argues the facts at length, asserting that they show Levin to have been negligent but do not show Welsh to have breached its duty of due care and that, even if the facts do show Welsh to have been at all negligent, they do not show Welsh to have been 4½ times as negligent as Levin. In turn, Levin's brief argues at length that Levin's testimony contradicted Welsh's and that Welsh's testimony was inherently incredible. Levin contends that the jury was not required to accept Welsh's version of the facts and that there was ample evidence to support the verdict.

■■ Except for one citation not on point, Welsh refers to no authority in support of its argument on the weight of the evidence, despite contending that "[t]his is *not* an appeal which can be resolved by simply deferring to the finder of fact" (emphasis in original) and that "[t]he strangeness and irrationality of the jury's findings on liability is unmistakeable [*sic*]." In contrast, Levin cites ample authority on testing the manifest weight of evidence. (*Monier v. Winkler* (1987), 158 Ill. App. 3d 724, 729, 511 N.E.2d 246, 250; *Ford v. City of Chicago*

(1985), 132 Ill. App. 3d 408, 412, 476 N.E.2d 1232, 1236.) In accordance with the tests enunciated in *Monier* and *Ford*, the jury's verdict in the case at bar as to negligence on Welsh's part was not "unreasonable, arbitrary and not based on the evidence" (*Monier*, 158 Ill. App. 3d at 729, 511 N.E.2d at 250), nor was it "palpably erroneous and wholly unwarranted *** [or] clearly the result of passion or prejudice" (*Ford*, 132 Ill. App. 3d at 412, 476 N.E.2d at 1236).

As Levin argues, "the jury had both the physical facts, common sense, and Harry Levin's testimony from which to find that [Welsh's driver] violated the statute" on yielding the right of way during left turns. (Ill. Rev. Stat. 1977, ch. 95½, par. 11—902.) Levin testified that Welsh's truck turned left across his path without first stopping, at a time when Levin was 70 or 80 feet short of drawing abreast of the driveway into which the truck was turning. Levin testified that he then applied his brakes as quickly as he could but that his car skidded into the right rear portion of the turning truck. This testimony alone belies Welsh's assertion that "there was no evidence that defendant had breached its duty of due care." And, despite Welsh's assertion that an independent witness, Peter Divita, "testified with certainty" that Welsh's truck stopped before turning, the record discloses that on cross-examination Divita testified that he could not be sure whether the stationary truck that he had seen was Welsh's truck and that trucks often turned into the driveway, which led to a shipping and receiving area. In any event, Divita testified that he saw a stationary truck for only a few seconds, did not observe it continuously, and heard the sounds of the accident about a minute or so afterward.

Although Welsh contends that Levin's negligence "is indisputable" and that he was speeding, the most support lent by Levin's testimony to the latter assertion came on cross-examination when Levin acknowledged that his highest speed immediately prior to the accident was "between 35 and 40" miles per hour. As Levin argues, this phrase can be interpreted as including a lawful speed limit of 35 miles per hour.

Moreover, although Welsh argues that Levin could have remained within a speed limit of 35 miles per hour and maneuvered around the truck by switching into the innermost traffic lane, Levin contends that any slight decrease of speed to 35 miles per hour still would have left him unable to avoid the truck because the truck blocked the middle lane for seven or eight seconds before the collision. Despite Welsh's argument that when Levin hit the truck in the middle lane the truck was clearing the innermost lane, it is obvious that if Levin had not delayed the impact by applying his brakes, the truck might

not have cleared the inner lane by the time Levin's car reached the path of the truck. Had this been the case, Levin would not have been able to steer around the truck by using the inner lane. In addition, a reduction of Levin's speed even from 40 to 35 miles per hour might have contributed little to Levin's ability either to stop within 70 to 80 feet or to slow and steer around the truck, while suddenly applying his brakes could plausibly have produced the type of skid shown by the evidence and made it impossible for Levin thereafter to steer his car into the inner lane even had the truck cleared that lane by the time the car reached the truck's path.

 Finally, the jury's verdict that Levin was 18% negligent can be interpreted as having taken into account the possibility that Levin was traveling slightly in excess of a lawful speed limit.[1]

Given the conflicting evidence and the jury's role to determine credibility and resolve factual questions, we hold that the jury's verdict for Levin and its finding that 82% of the total negligence was attributable to Welsh were not against the manifest weight of the evidence. *Monier*, 158 Ill. App. 3d 724, 511 N.E.2d 246; *Ford*, 132 Ill. App. 3d 408, 476 N.E.2d 1232; *Newton v. Meissner* (1979), 76 Ill. App. 3d 479, 489, 394 N.E.2d 1241, 1248; *Russo v. Checker Taxi Co.* (1978), 67 Ill. App. 3d 379, 381, 385 N.E.2d 33, 34.

### 2. ACCIDENT RECONSTRUCTION EXPERT

Welsh contends that, although the trial judge had originally ruled that the parties could call their accident reconstruction experts to testify and then denied a subsequent motion by Levin to bar Welsh's expert from testifying, the judge later reversed his denial of Levin's subsequent motion in the erroneous belief that he had no discretion under Supreme Court Rule 220 (107 Ill. 2d R. 220) to allow such testimony by Welsh's expert because the expert's identity had not been the subject of timely disclosure. Welsh contends that the expert would have been a "key witness."

Levin responds that the parties stipulated that neither party would call an expert from the Northwestern Traffic Institute, which inadvertently had been consulted by both parties in such a manner as to create a conflict of interest, but that the trial judge originally made no ruling as to whether other belatedly acquired experts would be

---

[1]Testimony by a police witness showed the posted speed limit to have been 35 miles per hour. Nevertheless, although Welsh repeatedly asserts that Levin was speeding and that Levin admitted that the speed limit was 35 miles per hour, it appears that the most that Levin admitted was that *if* the limit was as stated and *if* his speed exceeded it, he was speeding.

permitted to testify. Levin further responds that his subsequent motion to bar Welsh's expert from testifying was granted; on this point, Levin ignores Welsh's contention that granting the motion represented a reversal of an earlier ruling by the trial judge on the motion.

■ The substance of the trial judge's oral rulings must be gleaned from perusal of many pages of the transcript of argument of counsel and the trial judge's comments, to 78 of which pages Welsh cites the court merely for the asserted initial denial of Levin's motion. However, it is clear that the trial judge eventually and erroneously relied on the dissent from the supreme court's then-recent denial of leave to appeal in *In re Day* (1985), 138 Ill. App. 3d 783, 486 N.E.2d 307, *appeal denied* (1986), 111 Ill. 2d 582, 490 N.E.2d 699, when he ruled that Welsh's expert would not be allowed to testify because the trial judge lacked "discretion to bend Rule 220." An error in a conclusion of law is not ground for reversal where the judgment of the trial court is correct and proper. (*Ehredt v. Forest Hospital, Inc.* (1986), 142 Ill. App. 3d 1009, 1012, 492 N.E.2d 532, 535, *appeal denied* (1986), 112 Ill. 2d 572.) The judgment of the trial court may be affirmed for any reason appearing in the record even if it is not the same reason upon which the trial court based its ruling. (*Haney v. Haney* (1962), 37 Ill. App. 2d 216, 222, 185 N.E.2d 409, 412.) "[W]e are to decide upon the correctness of the judgment of the Court below, upon its conclusion, and not upon the justness of the reasoning by which that conclusion was attained." (*Morrison v. Hinton* (1843), 5 Ill. 457, 459; accord *Harrison v. Kamp* (1946), 395 Ill. 11, 69 N.E.2d 261.) Therefore, the court has considered whether Welsh's expert's testimony was properly barred on any ground other than the one stated by the trial judge.

As correctly argued by Levin, Welsh's assertion that exclusion of its expert's testimony "severely prejudiced" Welsh appears strained in view of the fact that not only did Levin present no expert testimony but also Welsh's counsel himself, on the day before trial, had vigorously opposed leave at such a late date for Levin to call a previously undisclosed expert, on the ground that to do so "violates Supreme Court Rule 220 and everything that Rule is supposed to stand for." In addition, Welsh had offered to stipulate that neither side should call an accident reconstruction expert witness. Moreover, counsel for Welsh was unable to articulate the relevancy of the expert's testimony; counsel asserted that the testimony would tend to establish the speed at impact but was unable to demonstrate how this fact would be relevant independently of the speed before braking, as to which latter speed the expert testimony would not be admissible, be-

cause eyewitness testimony would have been introduced with regard thereto.[2] Even if the trial judge had professed to exercise discretion in barring Welsh's expert, he would not have abused his discretion in so doing, because Welsh had not shown reliance on the expert's testimony and because counsel for Levin asserted that he had refrained from calling his own new expert in light of Welsh's previous objection to such a procedure, on which the trial judge had not clearly ruled.

 Apart from whether Welsh was prejudiced by exclusion of its expert's testimony or whether allowing the testimony would have violated Supreme Court Rule 220 (107 Ill. 2d R. 220), an accident reconstruction expert may not testify as to matters on which there is physical or eyewitness evidence sufficient for the jury to draw its own conclusions, unless scientific evidence beyond the average juror's ken is required by the jury. (*Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 359, 392 N.E.2d 1, 3; *Plank v. Holman* (1970), 46 Ill. 2d 465, 471, 264 N.E.2d 12, 15; accord *Misch v. Meadows Mennonite Home* (1983), 114 Ill. App. 3d 792, 799-800, 449 N.E.2d 1358, 1363-64; *Trillet v. Bachman* (1981), 96 Ill. App. 3d 477, 481, 421 N.E.2d 580, 583-84, *appeal denied* (1981), 85 Ill. 2d 576.) Whether expert testimony should be introduced is a matter within the trial judge's discretion. (*Misch*, 114 Ill. App. 3d at 800, 449 N.E.2d at 1364.) Eyewitness testimony is preferred over reconstruction testimony, and in order to justify excluding the latter it is not necessary that eyewitnesses see everything that occurred, but rather "[i]t is sufficient if they can relate circumstances from which the impact might reasonably be inferred." *Misch*, 114 Ill. App. 3d at 799-800, 449 N.E.2d at 1363.

 In the present case, the reconstruction expert's testimony would have related to the speed and angle at impact, the speed of the truck while turning, the points of contact between the vehicles, the reaction time of a driver in perceiving danger and removing a foot from the accelerator, and other matters, none of which can be said to be beyond the ken of the average juror and on most of which evidence in the form of eyewitness testimony, photographs, and other data was available for the jury. (*Cf. Trillet*, 96 Ill. App. 3d at 481, 421 N.E.2d at 584.) Exclusion of the expert's testimony would not have

---

[2]In later argument, counsel for Welsh did assert that speed and angle at impact would be relevant to the damages claimed by Levin. In addition, in his offer of proof, counsel for Welsh asserted that the expert would have testified to numerous other aspects of the collision. However, if in its discretion the trial court might properly have barred accident reconstruction expert testimony on some ground, this rationale by Welsh's counsel should not defeat the court's exercise of its discretion.

been an abuse of the trial court's discretion if the trial court had professed to use its discretion, and the offer of proof fails to show that the expert's testimony would have been admissible as relating to matters beyond a juror's ken.

■ Welsh cites *Fischer v. G & S Builders* (1986), 147 Ill. App. 3d 168, 497 N.E.2d 1022, *appeal denied* (1987), 113 Ill. 2d 573, as holding that the trial court possesses discretion in applying sanctions for noncompliance with Supreme Court Rule 220. From this, Welsh argues that in the case at bar the trial court committed reversible error in disclaiming such discretion. However, as Welsh is obliged to acknowledge, in *Fischer* the appellate court upheld the trial court's application of Rule 220 to disqualify an expert, thus weakening the force of the citation whether or not the language about a trial court's discretion in *Fischer* is *dictum* or part of the holding. (Compare *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 224, 511 N.E.2d, 974, 981, *appeal denied* (1987), 117 Ill. 2d 553 (Rule 220 discretion is narrow), and *James v. Yasunaga* (1987), 157 Ill. App. 3d 450, 510 N.E.2d 531, *appeal denied* (1987), 116 Ill. 2d 559 (upholding strict application of Rule 220), with *Payne v. Nicholas* (1987), 156 Ill. App. 3d 768, 509 N.E.2d 547 (upholding allowance of expert testimony against contention of untimeliness), and *Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 507 N.E.2d 1213, *appeal denied* (1987), 116 Ill. 2d 575 .(upholding trial court's discretion in barring tardily disclosed witness).) Moreover, if (as we hold) Welsh's expert's testimony would have been inadmissible under the rule of *Peterson, Plank,* and their progeny, it is immaterial whether the trial court erroneously disclaimed discretion when it barred the testimony—particularly since Welsh has fallen so far short of showing that its defense was prejudiced by the exclusion.

As for Welsh's citation of two criminal cases for the proposition that it is reversible error not to exercise the court's discretion in a case where it exists, those cases involved refusal to allow juries to review testimony. (*People v. Autman* (1974), 58 Ill. 2d 171, 317 N.E.2d 570; *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166.) A third case cited by Welsh involved refusal to clarify verdict forms for a jury in a civil case (*Hunter v. Smallwood* (1975), 28 Ill. App. 3d 386, 328 N.E.2d 344), and a fourth (*Gale v. Hoekstra* (1978), 59 Ill. App. 3d 400, 375 N.E.2d 456) is not at all on point, merely holding that a certain witness was not testifying as a reconstruction expert. None of these four cases supports Welsh's contention that the trial judge committed reversible error in the present case when he barred Welsh's expert's testimony after disclaiming discretion in the matter.

### 3. ARGUMENT AS TO SPECIAL INTERROGATORY

■ Welsh contends that Levin's counsel improperly advised the jury that if it answered "yes" to the special interrogatory as to whether plaintiff's negligence was the sole proximate cause of his injuries, there could not be a verdict for plaintiff. Welsh cites *Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468, for the rule that it is reversible error for counsel to alert the jury to the legal consequences of its answer to a special interrogatory.

Levin responds that his counsel was interrupted by Welsh's counsel's objection and that if he had been allowed to complete his sentence in argument, counsel would have added that the reason that there could not be a verdict for plaintiff if his negligence were the sole proximate cause would be that plaintiff would have failed to prove his case and could not recover if no one else were negligent. Levin further responds that in so stating, his counsel was making a proper argument and was not directly linking the jury's verdict with the special interrogatory or alerting the jury through the "contamination" of "tipoff words" to the legal consequence of a particular answer to the special interrogatory. Levin contends that "[c]ounsel was arguing a simple matter of logic," "never told the jury that there was any link between its answer to the special interrogatory and its general verdict," and "never stated that the answer and the verdict must 'conform' or 'harmonize.'" Levin further contends that instructions on negligence told the jurors as much as his argument told them and that in any event the jury's use of the special verdict form, in which it attributed 18% of the fault to Levin, made the special interrogatory ultimately redundant as a test of sole proximate cause, thus belying any prejudice to Welsh from counsel's argument. Finally, Levin contends that by subsequently cautioning the jury to disregard counsel's comments about "what verdict you will sign" and by prohibiting counsel from continuing with his line of argument, the court effectively prevented any error from being prejudicial to Welsh.

In *Sommese*, which Welsh cites, counsel in closing argument had told the jury that a special interrogatory was "slipped in" by his opponent; that the jury's answer thereto would supersede the verdict; and that the jury should harmonize its answer with the verdict so as not to deprive the plaintiff of recovery. (*Sommese*, 36 Ill. 2d at 266, 222 N.E.2d at 470.) In reversing, the supreme court stated that even if defense counsel had objected and been sustained, counsel would have been unable to overcome the fact that the jury already had the prejudicial information as to the interrogatory's source and effect. *Sommese*, 36 Ill. 2d at 268, 222 N.E.2d at 471.

The case at bar differs from *Sommese*, however, in that Levin's counsel did not state the source of the special interrogatory; did not state that the answer thereto would supersede the verdict; and did not bid the jury to harmonize its verdict with its answer to the interrogatory. "[I]t is not improper for counsel to suggest to the jury how it should answer the special interrogatory as long as counsel does not caution the jury to conform its answer to the verdict." (*Burns v. Howell Tractor & Equipment Co.* (1977), 45 Ill. App. 3d 838, 848, 360 N.E.2d 377, 385, *appeal denied* (1977), 66 Ill. 2d 625.) In *Burns* and in the similar case of *Moore v. Checker Taxi Co.* (1971), 133 Ill. App. 2d 588, 273 N.E.2d 514, counsel had merely argued that the jury should answer a special interrogatory in a certain way because if the plaintiff were guilty of negligence he could not recover; in both cases, the court found no error in counsel's argument. And, though Welsh contends that in what Levin's counsel stated before objection, counsel advised the jury of the "legal effect" of its answer to the interrogatory, it is equally plausible that Levin's counsel, as he contends, was merely advising the jury of the answer's logical "effect"—namely, that in contrast to a situation of comparative negligence, if the sole negligence were Levin's then Levin could not recover against anyone else. In view of the ambiguity and brevity of Levin's counsel's statement to the jury on this point, as well as the subsequent cautionary instruction by the trial judge, we hold that the trial court committed no reversible error by sustaining Welsh's objection to Levin's argument and cautioning the jury but implicitly denying Welsh's motion for a mistrial.

### 4. VERDICT FORMS

■ Welsh contends that by giving the jury both a general verdict form for Levin and a modified general verdict form for Levin that allowed for partial attribution of negligence to him, while giving only one verdict form for Welsh, the trial court gave duplicative forms that "unduly emphasized and encouraged" a verdict for Levin and constituted reversible error. In support of this contention, Welsh cites comments by the Illinois Supreme Court Committee on Jury Instructions in Civil Cases that the modified form is an "alternative" to the general form and that both "need not be given" (Illinois Pattern Jury Instructions, Civil, Introduction, at A—4, No. A45.06, Comment, at A—35 (2d ed. Supp. 1986) (hereinafter IPI Civil 2d)), as well as the court's statement in *Hunter v. Sukkar* (1982), 111 Ill. App. 3d 169, 178, 443 N.E.2d 774, 780, that both verdict forms need not be given.

As Levin correctly responds, it has been held that the general

verdict form for plaintiff and a specially modified computational form, the latter of which would apply only if defendant were liable and plaintiff were negligent, were not duplicative.[3] (*Ruffiner v. Material Service Corp.* (1987), 116 Ill. 2d 53, 61, 506 N.E.2d 581, 585.) However, in the case at bar, the modified form (based on IPI Civil 2d No. A45.06) would have applied if defendant were liable whether or not plaintiff were negligent; thus, the supreme court's *Ruffiner* holding is not clearly dispositive. Nevertheless, Levin contends that a line of cases has established that whether to use a general verdict form, a comparative-negligence verdict form, or both is within the trial court's discretion. See *Ruffiner v. Material Service Corp.* (1985), 134 Ill. App. 3d 747, 760-61, 480 N.E.2d 1157, 1166-67, *rev'd on other grounds* (1987), 116 Ill. 2d 53, 506 N.E.2d 581 (and cases therein cited).

Specifically, the *Hunter* case cited by Welsh noted that "[v]erdict forms must be drawn to insure that they cover every possible finding under the evidence from the viewpoint of all parties." (*Hunter*, 111 Ill. App. 3d at 177, 443 N.E.2d at 780.) In addition, *Hunter* involved a plaintiff's complaint that only the modified, computational form for comparative negligence had been given for plaintiff and not also the general verdict form for plaintiff; in effect, the *Hunter* court held that two forms had been enough and that plaintiff was not entitled to a third, "pure" form. This holding was not the same as a holding that plaintiff should *not* have been given a third, and thus at best it provides only indirect support for Welsh's contention that the court should not have given one general verdict form for Levin and one comparative-negligence form for him. Moreover, although Welsh contends that none of the cases cited by Levin support the giving of what Welsh terms duplicative verdict forms, at least one of them—*Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 450 N.E.2d 1199—did involve both a modified general plaintiff's verdict and a comparative-negligence plaintiff's verdict. (*Hazelwood*, 114 Ill. App. 3d at 709, 450 N.E.2d at 1204-05.) And in *Ruffiner*, 134 Ill. App. 3d at 761, 480 N.E.2d at 1167, the court stated that, "assuming, *arguendo*, that [general and comparative-negligence verdict forms were duplicative], we would hold the duplication to be harmless."

---

[3]Levin also questions whether the comparative-negligence verdict form was really favorable to him, since it allowed the jury to assess fault against him "in a major amount." However, the form ultimately found against defendant, regardless of any permissible attribution of fault to plaintiff, so that its thrust cannot be said to be evenly balanced between the parties. Still, this fact would not alter the asserted fact of the trial court's discretion as to verdict forms.

In view of the degree of discretion vested in the trial court with respect to verdict forms (see *Ruffiner*, 134 Ill. App. 3d at 760-61, 480 N.E.2d at 1166-67), as well as the specific holding *arguendo* of *Ruffiner*, we hold that submission to the jury of the verdict forms in the case at bar was not error.

### 5. MANIFEST WEIGHT OF EVIDENCE: DAMAGES

■■ Welsh's contention that the jury's assessment of damages was against the manifest weight of the evidence rests on the combination of errors alleged as to liability (and already discussed) with other alleged errors relating specifically to damages, which are to be discussed. Levin responds to this contention with an exhaustive recitation of the proof of his injuries and the alleged shortcomings of defendant's medical witnesses, observing that "[t]he medical and other damages-related testimony occupies over 2,000 pages of the transcript" and that the jury had ample evidence on which to base its damages assessments. Because of the volume of evidence on damages and our decision as to both sets of errors alleged by Welsh, the foundation for this general damages contention by Welsh is undermined, and we accordingly reject it.

### 6. FORMER EMPLOYER'S TESTIMONY ON EARNINGS

■■ Welsh contends that the trial court committed reversible error by allowing Levin's former employer, Alex Eisenberg, to testify as to how much Levin might have earned if he had not been injured. Welsh asserts that this alleged error was devastating because there was no other evidence of Levin's potential earnings absent injury. Welsh terms Eisenberg's testimony admittedly speculative as well as improper opinion testimony by a layman, concluding that the testimony was highly prejudicial because the jury allegedly relied on it to reach a simple arithmetical award of $513,000 in lost earnings based on multiplying "Eisenberg's guesswork" by an assumed work life of 18 years remaining to Levin.

Levin responds that Eisenberg qualified as an expert and was uniquely able to aid the jury on the earnings question. Levin also contends that cases cited by Welsh as to the alleged speculative nature of Eisenberg's testimony are inapposite because they deal with whether the probability of future income loss, not its magnitude, was established with reasonable certainty and in them the contested expert testimony was approved on review. (*La Salle National Bank v. City of Chicago* (1985), 132 Ill. App. 3d 607, 478 N.E.2d 417; *York v. Grand Trunk Western R.R. Co.* (1979), 71 Ill. App. 3d 800, 390 N.E.2d 116.)

Levin also contends that the verb "speculate" entered Eisenberg's testimony only by reason of a characterization in which Eisenberg was induced to acquiesce during cross-examination and that a degree of speculativeness is inherent in lost-earnings testimony, but not objectionably so. Finally, and significantly, Levin contends that in addition to Eisenberg's testimony and contrary to Welsh's assertion that the testimony was the only evidence of Levin's earning potential, the evidence included Levin's and his employing company's records and the extensive testimony of Levin, his accountant, Welsh's expert, and two other witnesses as to Levin's earnings, from all of which the jury had ample basis for determining Levin's lost earnings.

In turn, Welsh contends that Eisenberg merely and inconsistently estimated increases in Levin's potential earnings had he not been injured and that the estimated increases did not correspond to Eisenberg's company's annual growth rate or plaintiff's own testimony of his annual earnings growth rate. In addition, Welsh contends that Eisenberg was not qualified, tendered, or identified as an expert witness whose opinion testimony might be admissible.

"Where the right of recovery exists the defendant cannot escape liability because the damages are difficult of exact ascertainment. *** The rule is, that while the law will not permit witnesses to speculate or conjecture as to possible or probable damages, still the best evidence which the subject will admit is receivable, and this evidence is often nothing better than the opinions of persons well informed upon the subject under investigation." (*Johnston v. City of Galva* (1925), 316 Ill. 598, 603-04, 147 N.E. 453, 455.) "All damages *** are subject to some uncertainties and contingencies, especially those that seek to compensate for future injuries. Accordingly, most courts hold that in order to warrant a recovery for impairment of earning capacity in personal injury actions, the impairment of earning capacity must be shown with reasonable certainty or reasonable probability, and there must be evidence which will permit the jury to arrive at a pecuniary value of the loss." (Annot., 18 A.L.R.3d 88, 97 (1968).) "While loss of earnings or the difference between earnings before and after injury is not determinative of the question of impairment of earning capacity, the plaintiff seeking an award for impairment of earning capacity is generally allowed to put in evidence his actual earnings for a reasonable period before the injury and his actual earnings, if any, after the injury." (Annot., 18 A.L.R.3d 88,102-03.) Evidence of impaired earning capacity can be presented by the testimony of lay witnesses who are familiar with matters relating to the plaintiff's employment. Annot., 18 A.L.R.3d 88, 103.

■■■ ■ Evidence of earnings before and after an injury is admissible (see 15 Ill. L. & Prac. *Damages* §237 & n.76 (1968) (and cases therein cited)), although testimony as to lost earnings that is speculative, remote, or uncertain is improper (see 15 Ill. L. & Prac. *Damages* §244 (1987 Supp.) (and cases therein cited)). In order to recover lost earnings, all that the law requires is evidence that will establish, with a fair degree of probability, a basis for assessing damages. (*Tracy v. Village of Lombard* (1983), 116 Ill. App. 3d 563, 575, 451 N.E.2d 992, 1001, *appeal denied* (1983), 96 Ill. 2d 551.) In *Tracy*, plaintiff's own estimation of his potential profit margin from electrical contracting work was sufficient. (116 Ill. App. 3d at 575, 451 N.E.2d at 1001.) While it was stated in *Christou v. Arlington Park-Washington Park Race Tracks Corp.* (1982), 104 Ill. App. 3d 257, 432 N.E.2d 920, that lost-earnings testimony is improper if it is merely speculative, remote, or uncertain, the *Christou* case involved evidence of an average restaurant owner's earnings when plaintiff merely aspired to be a restaurant owner. In the case at bar, Levin's former employer Eisenberg was informed about the business in which Levin was engaged, and, whether or not he could or did qualify as an expert under Supreme Court Rule 220 (107 Ill. 2d R. 220), we hold that Eisenberg's testimony was not so speculative, remote, or uncertain as to make its admission error. In any event, the jury had ample evidence besides Eisenberg's testimony on which to assess damages for loss of future earnings, thus rendering harmless any error that might otherwise exist in admitting Eisenberg's testimony as to what Levin might have earned.

### 7. PROHIBITING SURREBUTTAL

■■■ Welsh contends that Levin's rebuttal medical witnesses on damages presented new facts for the first time and that the trial court committed reversible error in refusing to allow Welsh to present surrebuttal testimony in response thereto.

Levin responds that the trial court has discretion whether to allow surrebuttal and that absent an abuse of discretion a reviewing court will not disturb the trial court's decision. In addition, Levin contends that his rebuttal witnesses' testimony contained no new matter that would justify surrebuttal, and that the proffered surrebuttal would not have refuted testimony of the rebuttal witnesses but would have been cumulative of prior defense testimony.

Levin correctly argues that in *City of Rock Island v. Starkey* (1901), 189 Ill. 515, 59 N.E. 971, cited by Welsh, a new form of paralysis was testified to on rebuttal, which would have justified surrebut-

tal, whereas in the case at bar Levin's rebuttal testimony presented no new theory of injury but continued to show a right hemiparesis (weakness of the right side of the body caused by brain damage) and was meant to refute Welsh's medical witnesses who had testified to having found no evidence to substantiate the diagnosis of right hemiparesis. As Levin also points out, one of Welsh's proffered surrebuttal witnesses, Dr. Marshall Matz, had already testified to finding a difference in Levin's leg measurements even though the doctor promptly discounted its significance. Thus, as Levin argues, Welsh should not be heard to claim surprise or a need for surrebuttal when Levin's own rebuttal witness subsequently brought out similar leg measurement differences. In addition, Welsh's offer of proof showed that Dr. Matz would have causally related the findings of Levin's medical rebuttal witness to Levin's diabetes, which as Levin argues would have been cumulative of prior defense testimony that Levin's symptoms resulted from his diabetes.

As for Welsh's second proposed surrebuttal witness, Dr. Paul Wolfe, his testimony would have related to Levin's intellectual impairment and the likelihood of Levin's return to a normal life. This testimony would have surrebutted nothing in Levin's rebuttal testimony but would merely have offered a prognosis as to Levin's eventual recovery from the brain damage that Dr. Wolfe would have admitted. Levin asserts that Dr. Wolfe's testimony could have been offered as part of Welsh's case in chief if Welsh had been diligent in discovery; Welsh implicitly admits as much but contends nonetheless that Welsh would have had no reason to offer such a prognosis until the "objective" evidence of brain injury was offered by Levin in rebuttal. However, it would have been Welsh's choice not to offer such a favorable prognosis if Welsh was aware of it during the case in chief; offering it did not have to depend on the content of Levin's rebuttal, and since brain injury was clearly not a new matter on rebuttal, the rebuttal testimony did not generate a right to offer Dr. Wolfe's prognosis in surrebuttal.

Surrebuttal is a matter of right to deny, explain, or avoid new matters. (*Ross v. Danter Associates, Inc.* (1968), 102 Ill. App. 2d 354, 367, 242 N.E.2d 330, 336; see *City of Rock Island v. Starkey* (1901), 189 Ill. 515, 521-22, 59 N.E. 971, 973.) But the fact that Levin's rebuttal included new evidence on old damages theories did not mean that new *matters* had been introduced on rebuttal that would require surrebuttal. Welsh's medical experts had testified to a lack of findings to substantiate the brain injury claimed by Levin; Levin's rebuttal was directed merely at Welsh's experts' testimony. A trial court's de-

cision to allow or deny rebuttal testimony will not be disturbed if there was no abuse of discretion. (*Hall v. Northwestern University Medical Clinics* (1987), 152 Ill. App. 3d 716, 721, 504 N.E.2d 781, 784, *appeal denied* (1987), 115 Ill. 2d 541.) Where testimony offered in rebuttal could have been offered during the case in chief, the trial judge has discretion whether to admit it. (*Gabrenas v. R.D. Werner Co.* (1983), 116 Ill. App. 3d 276, 284, 451 N.E.2d 1307, 1312.) We hold that the same rule applies to surrebuttal decisions and that Welsh has not shown that the trial court abused its discretion in barring Welsh's surrebuttal testimony.

## 8. NEUROPSYCHOLOGIST'S TESTIMONY

Welsh contends that the trial court committed reversible error by refusing to strike Levin's neuropsychologist's allegedly speculative testimony that Levin's diabetes could have been causally related to the accident. Welsh contends that diabetes treatment concededly was not within the neuropsychologist's expertise and she was merely speculating as to the cause of Levin's diabetes. Welsh also contends that the testimony by Levin's neuropsychologist, Dr. Sybille Anbar, directly attacked defense testimony that Levin's diabetes was not the result of the accident, further contending that Dr. Anbar's testimony served as the predicate for an instruction that the jury could award damages for aggravation of a preexisting condition, which the evidence suggested could only have been Levin's diabetes.

Levin responds that an expert need not necessarily be testifying in his or her specialty, citing *Buckler v. Sinclair Refining Co.* (1966), 68 Ill. App. 2d 283, 293, 216 N.E.2d 14, 19 (but see *Broussard v. Huffman Manufacturing Co.* (1982), 108 Ill. App. 3d 356, 362, 438 N.E.2d 1217, 1220-21; cf. *Galindo v. Riddell, Inc.* (1982), 107 Ill. App. 3d 139, 146, 437 N.E.2d 376, 382), and that in any event Dr. Anbar did not testify as to an opinion that Levin's diabetes was caused by the accident. Rather, Levin asserts, Dr. Anbar merely discussed the possibility of a connection between injury to Levin's hypothalamus and his diabetes. Levin also contends that Welsh's motion to strike Dr. Anbar's testimony was untimely in not being made until after both sides had rested, and that Dr. Anbar's testimony was harmless to Welsh because Welsh's cross-examination amply disclosed the limitations of the testimony.

■■ ■ The record reveals that, immediately after Dr. Anbar's discussion of a theoretical connection between diabetes and hypothalamic injury, she stated: "I am not a medical doctor. I don't feel competent to talk about that. As far as it relates to the brain, yes."

Cross-examination later pursued this point at length. Moreover, the motion to strike Dr. Anbar's testimony was untimely. A motion to strike is timely as soon as the objectionable character of testimony becomes apparent. (*Louis L. Weinzelbaum, Inc. v. Abbell* (1964), 49 Ill. App. 2d 442, 449, 200 N.E.2d 43, 47.) Even when a motion to strike was made at the close of plaintiff's case rather than the close of the entire case, the motion was untimely in *Johnson v. Hoover Water Well Service, Inc.* (1982), 108 Ill. App. 3d 994, 439 N.E.2d 1284, *appeal denied* (1982), 92 Ill. 2d 568. In the case at bar, Welsh delayed the motion too long. In addition, it is clear that because of its vigorous cross-examination of Dr. Anbar, Welsh was not unduly prejudiced by her testimony, and the jury had sufficient basis for according due weight to it. Thus, we hold that refusal to strike Dr. Anbar's testimony was not error.

### 9. ORTHOPEDIC EXPENSES

 █ Welsh contends that the trial court erred in giving instructions and verdict forms that permitted an award for future orthopedic expenses despite an alleged lack of evidence as to such expenses. However, beyond argument, Welsh cites no authority in support of this contention.

In response, Levin argues that the voluminous medical evidence in this case provided sufficient basis for the jury to conclude that similar medical care would be required in the future by Levin and for the jury to assess the reasonable value of such care. In addition, as Levin points out, the difference between indubitably proven past medical expenses and the jury's award for future expenses was $18,500, whereas there was evidence that Levin's future counseling sessions alone would cost $3,640 per year for an indefinite number of years.

The jury may not base its judgment on guesswork, but it may make a just and reasonable estimate of damage based on relevant data. (*Zenith Radio Corp. v. Hazeltine Research, Inc.* (1969), 395 U.S. 100, 124, 23 L. Ed. 2d 129, 148-49, 89 S. Ct. 1562, 1577, *on remand* (7th Cir. 1970), 418 F.2d 21, *rev'd on other grounds* (1971), 401 U.S. 321, 28 L. Ed. 2d 77, 91 S. Ct. 795.) And the absence of direct evidence as to any particular amount of damages does not by itself show a reason to attack the jury's verdict on damages. (*H. Vincent Allen & Associates, Inc. v. Weis* (1978), 63 Ill. App. 3d 285, 294, 379 N.E.2d 765, 771, *appeal denied* (1979), 72 Ill. 2d 582.) Evidence that future medical expenses will be incurred can be inferred from the nature of the disability. (*Burnett v. Caho* (1972), 7 Ill. App. 3d 266, 276, 285 N.E.2d 619, 627, *appeal denied* (1972), 52 Ill. 2d 597.) If the elements

of damage presented for the jury's consideration are proper under the facts of the case, then the assessment of damages is preeminently for the jury even though reasonable persons could differ as to the amount. *Sloma v. Pfluger* (1970), 125 Ill. App. 2d 347, 361-62, 261 N.E.2d 323, 329-30.

Here, the jury was instructed that it was to determine whether elements of damages, including future medical expenses, had been proved by the evidence and that if Welsh were found liable, the jury should then find the present value of the future reasonable medical expenses reasonably certain to be incurred.

Despite Welsh's assertion that there was no evidence of the cost of future orthopedic treatment, there was evidence that Levin's leg condition presented a very definite possibility of future fusion surgery and that he had already had numerous modifications to his leg brace. Levin also argues that prior bills were in evidence. Thus, we hold that the jury had ample evidence on which to base an award for future orthopedic expenses and that the trial court's instructions and verdict forms thereon were not erroneous.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.